STATE v. BIERNEY McTAGUE.[1]

April 4, 1924.

No. 23,590.

**Conviction for murder sustained.**

1.  The evidence sustains the finding of the jury that the defendant was one of a party of three, who had participated in a bank robbery and were in flight, some one of whom shot and killed an officer who intercepted them as they were fleeing.

**Proper to submit to jury murder in the third degree.**

2.  The court properly submitted murder in the third degree upon the theory that the jury might find that there was an unintentional killing while engaged in the commission of a felony.

Defendant with others was indicted by the grand jury of Todd county charged with the crime of murder in the first degree, tried separately in the district court for that county before Roeser, J., and a jury which returned a verdict of murder in the third degree. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*E. S. Cary,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Deputy Attorney General, *William M. Wood,* County Attorney, and *W. F. Donohue,* for respondent.

DIBELL, J.

The defendant McTague was indicted with William J. Hughes and another for murder in the first degree. On a separate trial he was convicted of murder in the third degree. He appeals from the judgment of conviction. The questions are:

(1) Whether the defendant is identified as one of three men who were fleeing after a bank robbery, some one of whom shot and killed an officer who intercepted them.

[1]Reported in 197 N. W. 962.

(2) Whether the evidence justified the submission of murder in the third degree.

1. On the early morning of July 29, 1922, the bank at Hewitt, in the northwestern part of Todd county, was burglarized. The burglars were disturbed in their work and left in flight in an auto towards Long Prairie 25 or 30 miles southeast. An auto was intercepted at the bridge over the Long Prairie river just west of Long Prairie by Williams, the marshal of Long Prairie, and Adams, the deputy sheriff of Todd county, who had been informed by phone of the burglary. Williams was shot from the auto and killed.

The auto was a 7-passenger Buick, bearing a Wisconsin plate on one end and an Iowa plate on the other. It carried fish poles and hand baggage in the luggage carrier. In it were found a shovel, pick and bar, which had been taken from an ice house at Hewitt, and an acetylene gauge taken from a garage at Hewitt. There was also in it a right hand gauntlet glove, and some burglar tools.

An auto answering this description appeared at Little Falls in Morrison county on July 26, and was there again on July 27. Later in the day it was at Sauk Center, some 25 miles southwest, and on July 28 it was at Lake Charlotte, a tourist camp about a mile from Long Prairie, and at Long Prairie. On the afternoon of the same day it was at Bertha, northwest of Long Prairie and a few miles south of Hewitt. It was in Hewitt later in the evening. There were 3 men in it. They were not identified. There is evidence that Hughes and McTague were with the auto at the time of its appearance at Little Falls on July 26, and at some of the intermediate points. One witness says that on the early morning of July 29, shortly after 2 o'clock, a Buick car, answering the description of the one in question, having in it some of the same property, driven by McTague, stopped and got water at his place some miles northwest of Long Prairie.

After the killing of Williams the three men abandoned the car, two going in one direction and one in another. On August 2, 1922, Hughes and McTague were found together in the woods on the shore of Cedar Lake, 3 miles east of Sauk Center and 15 miles

south of Long Prairie. Two guns were found there, and a gauntlet glove, a mate to which was found in the auto at Long Prairie. Hughes had a gunshot wound in the back, apparently inflicted a few days before. There was a gunshot hole in the back of the rear seat of the bandit auto. Hughes had his jumpers with him. They had a bullet hole in the back and were bloody.

McTague offered evidence that he was in Minneapolis on July 28 or 29 and until August 1, when he started for Bemidji with one Roy Moore in the latter's auto with 30 gallons of alcohol. McTague was dealing unlawfully in liquor. When between St. Cloud and Little Falls the question arose whether they were on the road to Bemidji. McTague got out of the car. Moore was to go up the road, turn around and come back, and they were then to investigate. Moore went up the road but did not return. McTague saw him no more. He walked up the road, struck a railroad, and went as far as the little station of Burtrum in a southwesterly direction toward Sauk Center. There he met Hughes, whom he had not seen before. They went on together, most of the time on the railroad, and finally came to the lake where they were captured by the national guard. McTague gave his name as Riordan, stated that he was working in the car shops at St. Paul, had laid off on account of the strike, and was on his way to North Dakota. When told of the murder, he said that he had seen 3 men going across the road some distance from the lake. He told conflicting stories.

The testimony in behalf of the state and in behalf of the defendant had its imperfections. There was feeling in the community, which may have reflected itself unfavorably to the defendant in some of the identifying testimony. Most of the defendant's witnesses were naturally disposed to his acquittal. There is no fair question but that the auto at Hewitt was the one intercepted at Long Prairie. The evidence sustains a finding that the same auto was at Little Falls a few days before and that McTague was with it throughout.

2. The court submitted murder in the first degree, murder in the second degree, murder in the third degree, and manslaughter

in the first degree. The evidence would have justified a finding of murder either in the first or the second degree.

The defendant claims that there was no evidence which would justify a conviction of murder in the third degree or of manslaughter in the first, that the conviction is wrong, that the verdict is an acquittal of the two higher degrees of murder, and that he should be discharged. The contention is a mistaken one.

To find murder in the first degree the jury must find a premeditated design to kill, and to find murder in the second degree it must find a design to kill. A finding of murder either in the first or in the second degree under the circumstances occurring at Long Prairie river would be a natural one. A verdict ot murder in the third degree was not illogical. In such a situation as was presented at the Long Prairie bridge the law does not say that the defendants, or any one of them, acting together with the others, had a design, or a premeditated design, to kill. The question was for the jury. If the purpose of the men in the bandit car was to wound only and to make their escape, that is, to commit a felony, they were guilty of murder in the third degree under the statute making an unintentional killing, which results while committing a felony, murder in the third degree. G. S. 1913, § 8606. If their purpose was short of a design to kill their crime was not murder either in the first or second degree.

The general question of the degrees of homicide had recent consideration in State v. Nelson, 148 Minn. 285, 181 N. W. 850. The defendant cites State v. Barrett, 40 Minn. 77, 41 N. W. 463. It is not opposed to what we have said. There, while persons in conspiracy were committing a felony, a killing occurred, and it was held that both, though only one did the act of killing, might be found guilty of murder in the first degree, as the verdict was. The point to the case is that when there is a combination or conspiracy to commit a felony, and as a natural and probable consequence murder results, all are principals and accountable, regardless of who does the actual killing. See G. S. 1913, § 8477. It does not dispense with the presence of design to constitute the two higher degrees of murder. There is no motion for a new trial. No ob-

jection was made to the submission of third degree murder or first degree manslaughter. From nothing that is said should it be inferred that the defendant would be entitled to a discharge, though neither of these two degrees was properly submitted, upon the theory that the verdict was an acquittal of the two higher degrees of murder.

Judgment affirmed.