### STATE v. HARRY SHEPARD.[1]

June 3, 1927.

No. 26,085.

**Indictment for murder in the third degree valid.**

1. An indictment, charging murder in the third degree committed by recklessly, wantonly, and unlawfully, while drunk, driving an automobile at a speed imminently dangerous to life along a public street and against another car in which were human beings so as to cause death of one named, and stating that such reckless driving, in defendant's drunken condition, regardless of the life of others upon such public street, evinced a depraved mind, is valid as against a demurrer and as against objections to the introduction of testimony.

**Verdict sustained by evidence.**

2. The evidence amply sustains the verdict of guilty as charged in the indictment.

**Charge correct which defined murder in the third degree.**

3. Murder in the third degree "when perpetrated by an act eminently dangerous to others, and evincing a depraved mind, regardless of

[1]Reported in 214 N. W. 280.

human life, although without a premeditated design to effect the death of any individual," involves unintentional killing. And the instructions of the court defining the murder charged accordingly were correct.

### Requested instruction not required by the evidence.

4. The evidence did not require the court to give the requested instruction that if defendant was so drunk that he did not know what he was doing he should be acquitted.

### Argument of county attorney proper.

5. There was no misconduct of the county attorney in his jury argument.

### No errors at the trial.

6. No reversible errors occurred at the trial.

### Denial of change of venue sustained.

7. No abuse of discretion appears in the denial of a change of venue.

Criminal Law, 16 C. J. p. 204 n. 59, 60; p. 205 n. 67; p. 894 n. 38; 17 C. J. p. 233 n. 78; p. 272 n. 2.

Homicide, 29 C. J. p. 1122 n. 30; 30 C. J. p. 97 n. 23; p. 103 n. 13; p. 315 n. 56; p. 337 n. 87; p. 399 n. 51.

See note in L. R. A. 1918B, 957; 2 R. C. L. 1212; 1 R. C. L. Supp. 748; 4 R. C. L. Supp. 164.

See 13 R. C. L. 117-119; 3 R. C. L. Supp. 77; 4 R. C. L. Supp. 827; 5 R. C. L. Supp. 706.

Defendant appealed from an order of the district court for Hennepin county, Nordbye, J., denying his motion for a new trial. Affirmed.

*A. M. Cary, H. Stanley Hanson*, and *Philip Bessler*, for appellant.

*Clifford L. Hilton*, Attorney General, *Floyd B. Olson*, County Attorney, *William C. Larson*, Assistant County Attorney, and *S. Paul Skahen*, Assistant County Attorney, for the state.

HOLT, J.

Harry Shepard was by the verdict of a jury found guilty of

murder in the third degree as charged in the indictment. From the order denying a new trial he appeals.

[1] The main attack of the appellant is directed against the order sustaining the indictment as against a demurrer and permitting the introduction of evidence over the objection that the indictment did not state a public offense. The indictment is not a model of conciseness and no good purpose will be served by setting it out in extenso. In substance, it charges that on the sixth day of September, 1926, at the city of Minneapolis, Minnesota, defendant did unlawfully and feloniously, without excuse or justification and without design to effect death, kill and murder one F. C. Carlton, by acts which did not constitute murder in the first or second degree, in that defendant did wilfully, feloniously, recklessly, mischievously, and wantonly drive and propel an automobile along a public highway, to-wit Twelfth street in said city, in a manner imminently dangerous to others, regardless of human life and evincing a depraved mind, at a high, dangerous, and unlawful rate of speed while in an intoxicated condition, and in so operating said automobile he did drive and propel the same into and against a Ford automobile then and there upon a public street in which were said Carlton and other human beings, inflicting upon the body and person of said Carlton mortal wounds from which on said day he died.

The particular objections urged against the indictment are as follows, viz: There are injected clauses charging that the speed at which the automobile was driven "was greater than was reasonable and proper having regard to traffic and use of the highway, and so as to then and there imminently endanger the life and limb and injure the property of other persons," and "at a rate of speed exceeding fifteen miles per hour for a distance of one-tenth of a mile," the point being that the rate of speed is not directly charged and that the rate stated in the last clause limits the other allegations of speed to virtually 15 miles per hour, with no allegations as to actual conditions in the streets mentioned in respect to travel by others, or any fact making such speed or a greater speed hazardous to human life. The clauses referred to were evidently intended to charge that defendant in the driving of his car was so doing in

violation of the provisions of G. S. 1923, § 2709, and therefore unlawfully. But those averments do not destroy the other unlawful and criminal acts charged against defendant in respect to his operation of the car. We do not think State v. McIntyre, 19 Minn. 65 (93), throws any light upon the question raised in respect to the instant indictment; and in State v. Gesas, 49 Utah 181, 162 Pac. 366, there was an allegation that the act resulting in the killing was a lawful act, certainly not parallel to the charges here set out.

The claim is also made that the statute (G. S. 1923, § 10070) under which this indictment was framed requires the facts going to show a depraved mind to be pleaded and that it is not enough simply to follow the language of the statute and charge that the unlawful speed, the wanton disregard of life, and the reckless operation of the car by defendant "evinced a depraved mind" in him. It seems to us the fact stated, namely, that defendant when drunk, at a high, reckless, and unlawful speed, eminently dangerous to the life of others, drove against the car of another on a public street, causing the death of an occupant therein, does evince or exhibit a depraved mind, even were it necessary to go beyond the words which define and describe the crime charged. Murder in the third degree may be committed in two ways, either when the acts causing the homicide are such as to evince a depraved mind, or else when life is taken unintentionally in the commission of felony. We therefore think it necessary that the indictment specify in which of the two modes the killing was effected, and as to the former it should be enough to describe the crime in the language of the statute, after setting out the various unlawful acts as here done.

[2] Not much space need be devoted to dispose of the contention that the proof failed to show guilt of murder in the third degree. Defendant was the owner of a Wills-St. Claire roadster. He spent the evening of September 5, 1926, in driving with a woman about the city and vicinity, stopping at places where drinking was going on, until at about two o'clock in the morning of the sixth, when he had a falling out with the woman at Third avenue south and Eighth street, resulting in her leaving him there. He then went up to rooms over a restaurant or store at that corner and spent the time

drinking with Crider and Cittadino until 3:30. George Murphy was in the rooms sleeping off a drunk. At the time last mentioned all four left the rooms and entered defendant's car—defendant, Murphy and Crider in the seat proper, and Cittadino opened and made use of the rumble seat as the automobile started off. The car moved south on Third avenue at the estimated speed of from 30 to 35 miles per hour, turned west on Twelfth street and increased the speed so that some estimated the same to be over 50 miles an hour. As the car approached Nicollet avenue a Ford coupé, in which were riding F. C. Carlton, his wife and a small girl, was passing north. Defendant's car struck the Ford, hurling it against the northwest curb of Nicollet and Twelfth, instantly killing Carlton's wife, inflicting wounds on F. C. Carlton from which he died in a few minutes, and seriously bruising the child.

There was evidence from which the jury could find that defendant in a maudlin spirit of recklessness and wanton depravity swerved from side to side of the street in an effort to throw Cittadino from the rumble seat, looking back as he was zigzagging on at a furious speed, and inquiring of his companions whether the "dago" was still there.

The defense attempted was that Murphy drove the car, defendant sitting between Murphy and Crider, and that defendant was so drunk as to be incapable of driving and never knew what occurred from the time he was drinking in the rooms above the restaurant or store mentioned until he was awakened by the police officers at about five o'clock in the morning in bed with another woman on the fifth floor of the hotel where he roomed on the second floor.

The jury could hardly avoid finding that, although drunk, defendant was not oblivious to what was going on; that after the accident he made a speedy getaway, arranged with Murphy to send a light Palm Beach suit and a straw hat to the room mentioned and take away the suit and cap he wore when the collision took place, and also directed that it should be said that he had remained in the room where found by the police officers from 11:30 p. m. of the fifth until the officers entered. His main witnesses, Crider and Cittadino, each admitted having been convicted of felonies more

than once. Murphy was not given an enviable reputation, but had not been convicted of crime. His testimony was positive that defendant was the one who drove the car. We have no hesitancy in holding that the evidence is amply sufficient to warrant the jury in returning a verdict of guilty of murder in the third degree.

[3] The other assignment of error stressed in the appeal relates to the charge and is thus stated: "Erroneous conception of essentials of offense of murder in the third degree conveyed to the jury by misstatements of law by counsel for the State and misleading instructions by the court."

We pass by the county attorney's alleged misstatement of the law with the remark that he was merely illustrating the different degrees of homicide by a comparison to degrees in larceny. It may also be said that defendant objected to the submission of manslaughter in the second degree, but since the jury found the higher crime, no attention need be given the definition of the lower grade.

The important proposition is whether the court adequately and correctly submitted the offense of which defendant was charged and found guilty. The defendant starts out with the subtle distinctions and technical arguments of the judges in Darry v. People, 10 N. Y. 120, disapproved of in part by this court in State v. Lowe, 66 Minn. 296, 68 N. W. 1094, and satisfactorily met in Hogan v. State, 30 Wis. 428, 11 Am. Rep. 575, and id. 36 Wis. 226. The last opinion, by Chief Justice Ryan, refused to follow the Darry case to the effect that an intentional killing is involved in the phrase used in the definition of murder in the third degree in our code, when not done in the commission of a felony, saying [at page 245]:

"So that we have the phrase 'although without any premeditated design to effect the death of any particular individual, in the definition of murder in the second degree, so far as intent is concerned, declared equivalent to the phrase 'without any design to effect death,' in the definition of murder in the third degree."

Our penal code embraces in the crime of murder in the third degree both murder in the second degree and murder in the third degree as defined by the Wisconsin statute when the Hogan decisions

were made. The historical development of our homicide statute is traced in State v. Nelson, 148 Minn. 285, 291, 181 N. W. 750, where it is said:

"In other words, since the penal code murder in the third degree may be committed in two ways. That first defined involves an unintentional killing, without a special design upon a particular person, by an act eminently dangerous to others, evincing a mind depraved and regardless of human life."

See also State v. Weltz, 155 Minn. 143, 193 N. W. 42, to the same effect, a case similar to this, though the particular point raised now was not there made.

The alleged misstatement of the law applicable to the crime charged must be found if anywhere in the following part of the charge to-wit:

"In order for you to be justified in returning a verdict of murder in the third degree, the state must have established something more than culpable or gross negligence—they must have established that Shepard's acts and conduct were reckless, mischievous or wanton, without special regard to their effect on a particular person, but with a reckless disregard of whether they injured any person or another, and by an act or acts eminently dangerous to others, evincing a mind depraved and regardless of human life. That is, if the killing of Carlton was perpetrated by an act eminently dangerous to others, and evincing a depraved mind, regardless of human life, although without a premeditated design to effect the death of any individual, it is murder in the third degree. * * * In considering the question of depravity of mind, which is an essential element of murder in the third degree, it is not necessary for the State to prove directly that the defendant had a depraved mind. The circumstances attending the act, the nature of the act causing death, may be considered by you in determining whether or not the defendant had a depraved mind at the time of the collision; that is, you have a right to consider the acts which the mind prompted in order to determine whether or not there is depravity of mind. In determining this question of depravity of mind, gentlemen, you have a right

to take into consideration Shepard's acts and conduct prior to the collision, the manner in which the car was being driven up Third avenue and along Twelfth street, the speed, his drunkenness, whether or not he was endeavoring to dislodge Cittadino from the rumble seat, and all other facts and circumstances adduced by the evidence, and determine whether or not the State has established beyond a reasonable doubt that the defendant's acts evince a depraved mind."

The court also charged that, as like essential facts, the state must prove that the acts of defendant were eminently dangerous to others and wantonly or recklessly regardless of human life. We consider the instructions and definition of the crime charged in the indictment sufficiently clear and accurate as to the particular objections now urged against it by appellant.

[4] There was one instruction requested and not given, to the effect that if the jury found that Harry Shepard was so drunk as to be incapable of knowing the nature of his act or that it was wrong, the verdict must be not guilty. As an abstract proposition of law the requested instruction was correct. And it is true that defendant professed to have been so drunk as to have no recollection at all of what took place just prior to the time the four left the room · where they had been drinking and entered the car until awakened by the officers in bed with a woman at the Marion Hotel. But the physical facts testified to by his own witnesses as well as all the evidence in regard to his own conduct both before and after the collision completely negative the existence of a state of drunkenness to which the requested instruction might apply. So we think it not error to refuse to instruct as requested.

[5] The final argument of the county attorney is made part of the settled case, and various parts thereoef are made the basis for alleged misconduct. Some allowances must be made for rhetorical flights in addresses of that sort. The argument of the county attorney was vigorous, but there was much in the evidence that lent itself to a severe arraignment of the attempted defense. It was proper to so make use thereof. We find nothing in the summing up of the case for the state which transgresses the rules of legitimate argument, somewhat embellished by figures of speech.

[6] The numerous rulings upon which errors have been assigned have been examined. We find none meriting discussion or relating to any matter of sufficient importance to in the least affect the verdict.

[7] There remains to be considered the error assigned on the refusal of the court to change the place of trial to some other county than Hennepin. There is no question but that the newspapers editorially and otherwise aroused public feeling against the perpetrator of the crime in question. But a change of venue is only to be ordered when the court apprehends the accused to be in danger of not receiving a fair trial by an unprejudiced jury in the proper county. It seems that there was no difficulty here on that score, for a satisfactory jury was obtained without defendant's exhausting his peremptory challenges. Counsel, however, contends that, even if it can be said that a fair and unbiased jury was had to start with, the atmosphere of the place of trial was so tainted with prejudice towards defendant that it reached the jury and influenced the verdict.

The application for a change of venue is addressed to the judicial discretion of the court. Here affidavits from more than 800 persons were adduced by defendant that the public had been so aroused that a fair trial could not be had in Hennepin county. The state produced affidavits from more than 1,400 persons to the contrary. We see no good reason for disturbing the conviction because of the refusal to change the place of trial. We may take notice of the fact that the daily press published in Hennepin county circulates quite freely throughout the state, and that the needless and wanton snuffing out life by drunken operators of automobiles necessarily arouses resentment in the breast of every one who has a proper regard for the rights of others. Every decent and lawabiding community abhors crime, and the more dastardly or wanton the crime the more the feeling aroused against the perpetrator. So it is not possible to find a place of trial for those accused of crime where there is no antagonism towards the evildoer.

The order is affirmed.