# STATE v. CHARLES THOMAS KOPETKA.

121 N. W. (2d) 783.

May 17, 1963—No. 38,314.

*John S. Connolly,* for appellant.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, *William B. Randall,* County Attorney, and *Peter J. Maloney,* Assistant County Attorney, for respondent, warden of State Prison.

MURPHY, JUSTICE.

This is an appeal from a judgment of conviction of murder in the third degree. The only question presented as stated in the appellant's brief is, "Does the indictment state facts sufficient to constitute murder in the third degree?"

Before discussing the indictment some reference should be made to the facts which appear in the record. The defendant, Charles T. Kopetka, at the time the offense was committed, was employed by a

poultry firm to visserate chickens. He had been estranged from his wife and was living apart from his family, which included four children. They resided with the wife's mother, Mrs. Cora Opsal, in St. Paul. The defendant resided in a downtown hotel. On the afternoon of December 24, 1959, the defendant left his place of employment and took with him seven knives used in boning chickens. He testified that prior to leaving he had consumed about a pint of whiskey. He returned to his hotel where, during the course of the afternoon and evening, he occupied himself by drinking 1½ pints of whiskey, sharpening the knives, and making telephone calls to his wife. About midnight he decided to go to his mother-in-law's home. There had been a gathering of relatives at the home on Christmas Eve and presents had been exchanged. The guests left at about 10 p. m., after which the occupants of the home retired. Mrs. Opsal occupied a bed in the living room. At approximately 1:30 on Christmas morning she was awakened. She then went into another room to put on a robe and returned to find the lights on and defendant standing in her presence. She screamed with fright and told the defendant to leave. He attacked her by stabbing her several times with one of the boning knives, cutting the tendons and nerves of her arm and stabbing her in the kidney. During this time Mrs. Opsal saw her daughter enter the dining room by a rear door. She heard her daughter call the defendant's name and saw her advance toward him. Mrs. Opsal then ran to a neighbor's house and asked her to call the police. When the police entered the living room, they found the defendant standing at the foot of the bed on which his wife lay. She had been stabbed several times and an abdominal wound was bleeding profusely. Defendant's wrists were bleeding. One of the children was sitting on a chair in the room. Mrs. Kopetka and her mother were taken to the hospital. Mrs. Kopetka died on the operating table about 2 hours later. The knife with which the defendant attacked his wife and mother-in-law was found on the floor between the living room and the dining room. Defendant admits that he had consumed a considerable amount of liquor prior to the commission of the acts related.

The defendant was represented by counsel and waived jury trial. After trial to the court he was found guilty of the offense of murder in

the third degree. He entered a plea of guilty to an information charging him with assault in the second degree against the person of Mrs. Opsal. He was given an indeterminate sentence on both convictions with the provision that they were to be served concurrently and not consecutively.

■ The indictment with which the defendant was charged reads as follows:

"Charles Thomas Kopetka is accused by the Grand Jury of the County of Ramsey, by this Indictment, of the crime of Murder in third degree committed as follows:

"The said Charles Thomas Kopetka on the Twenty-fifth day of December A. D. 1959, at the City of Saint Paul in said County then and there being, did wilfully and feloniously, without authority of law and without excuse or justification, kill and cause the death of a human being, to-wit: one Frances Kopetka, his wife, by perpetrating an act eminently dangerous to her, and evincing a depraved mind, regardless of human life, although without a premeditated design to effect the death of said Frances Kopetka, in that he, the said Charles Thomas Kopetka, while engaged in the commission of the felony of assault in the second degree, to-wit: an assault with a deadly weapon, a knife, upon the person of said Frances Kopetka, although without the design to effect the death of said Frances Kopetka, did wilfully, unlawfully and feloniously, by means of said knife, inflict upon the body of said Frances Kopetka mortal wounds, of which said mortal wounds the said Frances Kopetka did die on December 25, 1959; and that he, the said Charles Thomas Kopetka, in the manner and by the means aforesaid did wilfully, unlawfully and feloniously commit the crime of Murder in the Third Degree, Contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Minnesota."

It is the defendant's contention that the foregoing indictment does not state an offense within the provisions of Minn. St. 619.10, which defines and punishes murder in the third degree. That statute provides in part:

"Such killing of a human being, when perpetrated by act eminently dangerous to others, and evincing a depraved mind, regardless of human life, although without a premeditated design to effect the death of any individual, or without a design to effect death, by a person engaged in the commission of, or in an attempt to commit, any felony, except rape, assault with an attempt to commit rape, indecent assault, or sodomy, either upon or affecting the person killed or otherwise, is murder in the third degree, and shall be punished by imprisonment in the state prison for not less than seven, nor more than 30, years."

It may be said that § 619.10 comprehends that murder in the third degree may be committed in either of two ways. It may be committed (1) by one who without intent to effect death, perpetrates an act eminently dangerous to others, and evincing a depraved mind, regardless of human life, or (2) by one who without intent to effect the death of a person does so in the commission of a felony upon or affecting such person, subject to certain exceptions not here relevant.

Among our decisions dealing with the first category are State v. Lowe, 66 Minn. 296, 68 N. W. 1094; State v. Weltz, 155 Minn. 143, 193 N. W. 42; and State v. Shepard, 171 Minn. 414, 214 N. W. 280. In the Lowe case we said that this portion of the statute (66 Minn. 298, 68 N. W. 1095):

"* * * was intended to cover cases where the reckless, mischievous, or wanton acts of the accused were committed without special regard to their effect on any particular person or persons, but were committed with a reckless disregard of whether they injured one person or another."

The second classification is generally referred to as the felony murder. Representative of the authorities dealing with this offense is State v. McTague, 158 Minn. 516, 197 N. W. 962, where a police officer was shot and killed while attempting to stop a car suspected of having been used in the attempted commission of a bank robbery. In sustaining the conviction of murder in the third degree, we said (158 Minn. 519, 197 N. W. 963):

"* * * If the purpose of the men in the bandit car was to wound only

and to make their escape, that is, to commit a felony, they were guilty of murder in the third degree under the statute making an unintentional killing, which results while committing a felony, murder in the third degree."

In State v. Jackson, 198 Minn. 111, 268 N. W. 924, the defendant was convicted of murder in the second degree for death caused by striking the victim on the head while robbing him. We there held that the evidence of intent to kill was not sufficient to sustain the verdict but was sufficient for conviction of third-degree murder and directed entry of judgment accordingly. The court said (198 Minn. 113, 268 N. W. 925):

"We are unable to find in the evidence anything to indicate that the blow fatal to Williams was struck with a design to kill. Such a design is essential to a conviction of murder in the second degree. Evidence of that essential lacking, the conviction of murder in that degree cannot be sustained. But there is ample evidence of murder in the third degree * * *."

In State v. Nelson, 148 Minn. 285, 181 N. W. 850, the defendant was convicted of murder in the first degree. He appealed, contending that the evidence did not sustain a verdict for murder in the first degree and that it did not justify a submission of murder in the third degree. Defendant, while armed with a shotgun, had become involved in an altercation with the victim. In the struggle which followed, the gun discharged, inflicting fatal wounds on the victim. The court found that the evidence would not sustain a conviction of murder in the first or second degree and reversed, but indicated that it could possibly sustain a conviction of murder in the third degree. In discussing this aspect of the case, the court said (148 Minn. 292, 181 N. W. 853):

"The evidence does not suggest that the defendant was within the first portion of the definition of murder in the third [degree]. If he was committing or attempting to commit a felony upon Middleton and death resulted from his act while so engaged, he was guilty of murder in the third degree. An assault in the second degree defined by G. S. 1913, § 8632, is a felony."

While the indictment here is not a model of pleading, its deficiencies, if such they be, may be attributed to the pleader's attempt to allege in the words of the statute an offense which may be committed in two ways.[1] While it may be true that the indictment does not accurately charge the offense of murder in the third degree under the first division of the statute, we are of the view that it does adequately inform the defendant of the nature of the offense for which he is charged under the second part. It alleges that defendant "while engaged in the commission of the felony of assault in the second degree, to-wit: an assault with a deadly weapon, a knife, upon the person of * * * Frances Kopetka" did by means of such knife inflict mortal wounds from which she died. This charge adequately alleges the felony-murder offense which constitutes murder in the third degree.

■ We do not agree with the defendant that the apparent attempt of the pleader to charge the offense under the first part of the statute constitutes a fatal defect. The reference in the first part of the indictment, by which the pleader apparently intended to charge that the cause of death was perpetrated by an act eminently dangerous to others, evincing a depraved mind, regardless of human life, is surplusage and does not affect its validity. It is well established that where an indictment charges two offenses, but one inadequately, the latter may be disregarded as surplusage. State v. Henn, 39 Minn. 464, 40 N. W. 564.

In State v. Mancino, 257 Minn. 580, 102 N. W. (2d) 504, we dis-

---

[1]The provision of the proposed Minnesota Criminal Code which defines murder in the third degree correctly divides the offense into two categories in accordance with interpretations given to the statute by the Minnesota decisions referred to in the opinion. The proposed statute, § 609.195, clearly states the offense in the following language:

"Whoever, without intent to effect the death of any person, causes the death of another by either of the following means, is guilty of murder in the third degree and may be sentenced to imprisonment for not more than 25 years:

"(1)   Perpetrates an act eminently dangerous to others and evincing a depraved mind, regardless of human life; or

"(2)   Commits or attempts to commit a felony upon or affecting the person whose death was caused or another, except rape or sodomy with force or violence within the meaning of section 609.185."

cussed the statutes relating to the construction of indictments and informations and pointed out that the general rule now is that an indictment or information which is otherwise sufficient should not be invalidated by the fact that it contains surplusage, is awkwardly worded, or is inartfully drawn. See, also, State v. Oman, 265 Minn. 277, 121 N. W. (2d) 616.

It appears that this appeal has been taken in good faith and upon reasonable grounds. Upon proper certification to this court by order of the trial court to the effect that the defendant is unable, by reasons of poverty, to pay counsel fees, this court will, pursuant to Minn. St. 611.07, subd. 2, make its order directing the county treasurer of Ramsey County to reimburse the defendant's counsel for reasonable services and expenses.

Affirmed.