STATE EX REL. CHARLES THOMAS KOPETKA v.
RALPH H. TAHASH.

160 N. W. (2d) 399.

July 19, 1968—No. 40,941.

---

[1] An annotation of cases involving lawful search of an automobile is contained in 89 A. L. R. (2d) 721.

*John S. Connolly,* for appellant.

*Douglas M. Head,* Attorney General, and *David J. Byron,* Special Assistant Attorney General, for respondent, warden of State Prison.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

This is an appeal from an order discharging a writ of habeas corpus.

The background facts of this case are set out in State v. Kopetka, 265 Minn. 371, 121 N. W. (2d) 783, as follows:

"* * * The defendant, Charles T. Kopetka, at the time the offense was committed, was employed by a poultry firm to. viscerate chickens. He had been estranged from his wife and was living apart from his family, which included four children. They resided with the wife's mother, Mrs. Cora Opsal, in St. Paul. The defendant resided in a downtown hotel. On the afternoon of December 24, 1959, the defendant left his place of employment and took with him seven knives used in boning chickens. He testified that prior to leaving he had consumed about a pint of whiskey. He returned to his hotel where, during the course of the afternoon and evening, he occupied himself by drinking 1½ pints of whiskey, sharpening the knives, and making telephone calls to his wife. About midnight he decided to go to his mother-in-law's home. There had been a gathering of relatives at the home on Christmas Eve and presents had been exchanged. The guests left at about 10 p. m., after which the occupants of the home retired. Mrs. Opsal occupied a bed in the living room. At approximately 1:30 on Christmas morning she was awakened. She then went into another room to put on a robe and returned to find the lights on and defendant standing in her presence. She screamed with fright and told the defendant to leave. He attacked her by stabbing her several times with one of the boning knives,

cutting the tendons and nerves of her arm and stabbing her in the kidney. During this time Mrs. Opsal saw her daughter enter the dining room by a rear door. She heard her daughter call the defendant's name and saw her advance toward him. Mrs. Opsal then ran to a neighbor's house and asked her to call the police. When the police entered the living room, they found the defendant standing at the foot of the bed on which his wife lay. She had been stabbed several times and an abdominal wound was bleeding profusely. Defendant's wrists were bleeding. One of the children was sitting on a chair in the room. Mrs. Kopetka and her mother were taken to the hospital. Mrs. Kopetka died on the operating table about 2 hours later. The knife with which the defendant attacked his wife and mother-in-law was found on the floor between the living room and the dining room. Defendant admits that he had consumed a considerable amount of liquor prior to the commission of the acts related."

The issues involved on this appeal relate only to certain evidence admitted at the trial. The trial below, in which defendant was found guilty of third-degree murder, was before a judge, sitting without a jury.

During a search of defendant's room at the Ryan Hotel, evidence consisting of six knives and a knife sharpener was seized. Defendant contends and the state admits that these items were the fruits of an illegal search and seizure. The prosecution at the trial also placed into evidence written statements made by defendant to the police, and two officers testified to oral statements made to them by defendant.

It appears that defendant was found at the scene of the crime with his wrists cut and was taken to Ancker Hospital. The record shows that at about 3 a. m. on the morning of the attack Officer William S. Rasmussen went to the hospital to perform blood tests on defendant to determine his state of intoxication. After making these tests, the officer asked defendant if he would answer a few questions and defendant indicated he would. Upon questioning, defendant told the police officer he had brought a number of boning knives home. He described them and indicated that if he committed the offense, it was probably one of these knives he used on the victims.

One day later, on the morning of December 26, 1959, a statement was

taken from defendant which he signed later that day, and a copy was given to him. After signing the typewritten statement, defendant indicated that he would like some paper so that he could write out the details of the incident rather than elaborate on them at the time. Defendant then wrote out a description of the incident in his own handwriting and gave it to police the following day, December 27. A copy of this second statement was also retained by defendant.

The last conversation with defendant pertains to certain statements which he made to Detective Fred A. Buechner on December 28, 1959, relating to telephone calls defendant had made to his wife on the evening of the attack.

Officer Rasmussen was allowed to testify as to defendant's oral statements, and the two written statements were offered in evidence by the prosecution and admitted by the trial court. The conversation with Detective Buechner was brought out by cross-examination on the part of defendant's counsel.

The issues presented are: (1) Did the admission of the illegally obtained evidence constitute harmless error, and (2) were the admissions and statements by defendant to police officers in the manner hereinbefore stated violative of his constitutional rights under the law at the time of his arrest, or were they voluntarily given on the part of defendant?

■  The habeas corpus court found that the reception into evidence of the boning knives and sharpener obtained through an illegal search and seizure of defendant's hotel room, though erroneous, constituted harmless error.

While the admission of illegally obtained evidence at trial is certainly error, such admission may not constitute reversible error, depending on the facts of the case. In Chapman v. California, 386 U. S. 18, 22, 87 S. Ct. 824, 827, 17 L. ed. (2d) 705, 709, the United States Supreme Court stated:

"* * * [T]here may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."

The test of whether such an error is harmless was set out in Fahy v. Connecticut, 375 U. S. 85, 86, 84 S. Ct. 229, 230, 11 L. ed. (2d) 171, 173:

"* * * The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."

This test was restated in the Chapman case by adding that the evidence must be "harmless beyond a reasonable doubt." 386 U. S. 24, 87 S. Ct. 828, 17 L. ed. (2d) 711.

In determining on this appeal whether the reception of the illegally obtained evidence was harmless, it must be viewed in the light of the whole case against defendant. Two factors lead to the conclusion that the evidence was harmless beyond a reasonable doubt. First, the entire evidence is overwhelmingly against defendant without taking into account the knives and sharpener obtained by an illegal search and seizure. Mrs. Opsal testified that defendant stabbed her three times and then turned on his wife, and when the police arrived, defendant was standing near his wife's bed with his wrists cut and his wife was bleeding profusely from a knife wound in the abdomen. Finally, in a dying declaration, defendant's wife told the first officer who arrived on the scene that it was defendant who had stabbed her.

Another factor is that this case was heard before a judge without a jury and it is our view that the court was not impressed by the contested evidence. In fact, the judge indicated that he felt the knives were not "too material" and said "but for whatever they are worth they're received."

■ The next question is whether the admissions, confessions, and statements obtained by police from defendant following his arrest violated his constitutional rights. The habeas court held that the rules of Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. (2d) 977, and Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694, are inapplicable in determining the admissibility of the confessions in the instant case and that defendant failed to demonstrate that his confessions and admissions were not voluntarily obtained.

Defendant complains of the failure to warn and advise him of the right to counsel prior to taking the confession and the failure to provide counsel

during the taking of the confession. His contention in this respect is disposed of by Johnson v. New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. ed. (2d) 882, where it was held that the Escobedo and Miranda decisions, decided on June 22, 1964, and on July 13, 1966, respectively, are not retroactive and respective rules laid down therein are available only to persons whose trials began after the dates of the decisions.

Prior to these decisions, the question was whether admissions were voluntarily given. In State ex rel. Fruhrman v. Tahash, 275 Minn. 242, 246, 146 N. W. (2d) 174, 178, this court discussed the admissibility of a confession in a case arising in 1954 and stated:

"Defendant's confession being voluntary, it was admissible at the time of the proceedings in question, notwithstanding defendant may have been, as he now asserts he was, denied his request for counsel, or that he was not informed he could confer with counsel before making any statement."

The facts in the instant case clearly indicate that defendant's statements were made voluntarily. The evidence does not indicate that defendant was pressured to confess in any way and he does not contend that his statements were not voluntarily made. In fact, in the typewritten statement defendant indicated that the statement was made and signed freely, without any threats or promises. Also, the handwritten statement was written by defendant at his leisure, without threat or coercion.

Finally, all four of the alleged declarations were made within 3 days of the incident while defendant was in the hospital. Under the circumstances, the mere passage of time cannot have a significant effect on the voluntariness of the confessions and the habeas court so found.

Affirmed.