STATE of Minnesota, Respondent,

v.

Jeffery Wayne GALVAN, Appellant.

No. C7–84–1445.

Court of Appeals of Minnesota.

June 4, 1985.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Stephen W. Cooper, Neighborhood Justice Center, St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and FORSBERG, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Appellant was convicted of second degree murder and two counts of second degree assault. Appellant claims numerous trial court errors. We affirm.

## FACTS

On the evening of October 29, 1983, Gordon Strong, Kevin Strong, Ronald Andradde and Maria Garcia celebrated Andradde's birthday. The group went to a bar in St. Paul and had a couple drinks. An hour later, they took a cab to the Horseshoe Bar where they danced and continued drinking. Appellant Jeffery Galvan was also at the bar with Eufracio Flores, John Ortiz and Russell Galvan.

Appellant was bothering some women at the bar. Gordon and Kevin Strong told appellant to leave the women alone. Appellant then left the bar with Flores, Ortiz and Russell Galvan. The Strongs, Andradde and Garcia left the bar and walked towards a nearby restaurant. Appellant's group shouted at Strong's group who turned their backs and kept walking.

Appellant's group then confronted Strong's group. Andradde and Garcia saw appellant draw a handgun and point it at them. A shot was fired. Andradde ducked, jumped up and grabbed appellant.

Kevin Strong did the same. Andradde was pulled away from appellant by Flores. After the first shot was fired, Garcia ran for help. During the scuffle, a rose-tinted lens from Ortiz's glasses fell out. While Kevin Strong wrestled with appellant, a second shot was fired from appellant's gun, leaving a powder burn on Kevin Strong's wrist. Garcia turned and saw Gordon Strong laying on the ground and appellant waving a gun.

Garcia summoned Police Officer Brown who was parked near the rear of the bar. When Brown arrived at the scene, appellant's group was gone. Gordon Strong was taken to a hospital where he died of a gunshot wound to the heart. Ortiz's eyeglass lens, a spent .22 caliber casing, a live .22 caliber cartridge, and a metal pistol cylinder rod were found near the body. No gun was found at the scene.

Officer Brown took descriptions of the suspects and broadcast them on the police radio. Another officer heard the descriptions and picked up Flores who was walking near the scene. The officer returned Flores to the scene and Garcia said he was the man who had fired the shots. Another officer saw and stopped Ortiz. Kevin Strong identified Ortiz as being the one who shot Gordon Strong. After the shooting, Garcia and Andradde identified appellant in a photo lineup as the man who shot Gordon Strong.

A few days later, Kevin Strong, Andradde, Garcia and appellant's attorney attended a lineup at which appellant was present. All identified appellant as the one who shot Gordon Strong. Appellant was the only person in the lineup who had been at the Horseshoe Bar on the night of the shooting. Appellant's attorney did not object to the manner in which the lineup was conducted. In a subsequent search of appellant's home, several .22, .25, .32 and .38 caliber bullets were found.

Appellant was charged with one count of murder in the second degree and two counts of assault in the second degree. Prior to trial, appellant's counsel and the prosecutor had the opportunity to interview witnesses. Defense counsel moved for an in camera review or disclosure of the prosecutor's notes taken during the witness interviews. The motion was denied.

At trial, St. Paul Police Criminalist Officer James Gag testified about ballistics reports he made using a pistol similar to the one described by all witnesses. The purpose of his testimony was to show what distance from Strong the gun was fired. A photograph of the pistol which Gag used was also introduced. A jury found appellant guilty of second degree murder and two counts of second degree assault, and he appealed.

## ISSUES

1. Were the trial court's reasonable doubt instructions improper?

2. Was defense counsel entitled to an in camera examination or discovery of the prosecutor's notes from witness interviews?

3. Did the trial court erroneously permit evidence concerning the probable murder weapon and bullets found in appellant's home?

4. Did the trial court err by not submitting the lesser included offense of manslaughter to the jury?

5. Did the trial court err by excluding cross-examination about witnesses' prior misdemeanor convictions?

6. Were identification procedures overly suggestive?

## ANALYSIS

■ 1. Appellant claims the trial court's instruction on reasonable doubt was erroneous because it omitted language requiring "moral certainty." Appellant's claim is contrary to the well-established case law in this state. *See State v. Boykin,* 312 Minn. 593, 594, 252 N.W.2d 604, 605–06 (1977); *see also State v. Udstuen,* 345 N.W.2d 766, 768 (Minn.1984); *State v. Schmieg,* 322 N.W.2d 759, 760 (Minn.1982); *State v. Olkon,* 299 N.W.2d 89, 105 (Minn. 1980), *cert. denied,* 449 U.S. 1132, 101 S.Ct.

954, 67 L.Ed.2d 119 (1981). The trial court did not err by excluding language concerning "moral certainty" from Crimjig 3.03.

■ 2. Appellant claims the trial court committed reversible error by denying defense counsel's request to see the prosecutor's written notes concerning interviews with witnesses. The trial court denied the motion holding the notes were nondiscoverable attorney work product. The prosecutor's notes were not signed or written by the witnesses. The trial court properly excluded these notes as work product. Minn.R.Crim.P. 9.01, subd. 3; *see Goldberg v. United States*, 425 U.S. 94, 106, 96 S.Ct. 1338, 1346, 47 L.Ed.2d 603 (1976). Our decision in *State v. Hopperstad*, 367 N.W.2d 546 (Minn.Ct.App.1985) is inapplicable here because *Hopperstad* involved different types of information.

■ 3. Appellant claims the trial court erred by admitting expert testimony about gun tests, a picture of a gun that was believed to be similar to the murder weapon, and bullets found in appellant's home. Appellant claims the gun test and picture of the gun were irrelevant. The record indicates the gun tests used identical ammunition and the same brand and caliber handgun as that of the murder weapon. Thus, appellant's objections go to the weight and not the admissibility of the evidence. The trial court had the discretion to allow this form of expert testimony. *See State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn.1980).

■ 4. Appellant also claims the trial court erred by admitting into evidence various bullets found in appellant's home, including a .22 caliber Remington and Peters bullet. He claims the .22 caliber bullet was unduly prejudicial because the same type bullets were found at the scene of the shooting. The trial court properly admitted the .22 caliber bullet as evidence tending to connect appellant with the crime. *State v. Gayles*, 327 N.W.2d 1, 2 (Minn. 1982). The other caliber bullets that were admitted were not objected to and did not prejudice appellant. *See State ex rel. Ko-*

*petka v. Tahash*, 281 Minn. 52, 56, 160 N.W.2d 399, 402 (1968).

■ 5. Appellant next claims the trial court erred by refusing to submit a lesser included offense instruction on first degree manslaughter to his felony murder charge. The trial court did give a first degree manslaughter instruction in regard to the intentional second degree murder charge.

The rule is that a trial court has to submit a lesser offense only if the offense is a so-called lesser-included offense and only if there is evidence which produces a rational basis for a verdict acquitting defendant of the offense charged and convicting him of the lesser offense.

*State v. Nurmi*, 336 N.W.2d 65, 67 (Minn. 1983).

Here, the trial court read an instruction on first degree manslaughter. Thus, appellant received what he is asking for on this appeal because the jury could have found him guilty of first degree manslaughter. Even assuming the trial court would have had a duty to reread the manslaughter instruction in relation to the felony murder charge, the facts of this matter do not support appellant's position.

■ Manslaughter in the first degree requires heat of passion and provocation. *See* Minn.Stat. § 609.20(1) (1984). Gordon Strong and his friends were attempting to walk away from appellant's group at the time of the shooting. Thus, it was unnecessary for the trial court to submit a manslaughter instruction because there was no evidence of provocation. *Nurmi*, 336 N.W.2d at 67; *State v. Lee*, 282 N.W.2d 896, 899–900 (Minn.1979); *State v. Swain*, 269 N.W.2d 707, 715 (Minn.1978).

■ 6. The trial court did not err by refusing cross-examination regarding prosecution witnesses' prior misdemeanor convictions. The convictions did not involve dishonesty or misstatement. *State v. Darveaux*, 318 N.W.2d 44, 48 (Minn.1982); Minn.R.Evid. 609(a).

7. Appellant claims the lineup procedures were unduly suggestive. We do not believe the procedures used in this matter created a substantial likelihood of irreparable misidentification. Moreover, each of the witnesses had an independent basis for identifying appellant because each had ample opportunity to observe appellant the night of the shooting. *State v. Witt*, 310 Minn. 211, 213, 245 N.W.2d 612, 615 (1976).

### DECISION

Despite numerous allegations, appellant failed to demonstrate reversible trial court error.

Affirmed.