[Criminal No. 337.  Filed November 4, 1913.]

[136 Pac. 276.]

## M. A. BENNETT, Appellant, v. STATE, Respondent.

1. HOMICIDE — "MURDER" — "MALICE" AFORETHOUGHT. — Under Penal Code of 1901, section 172, defining "murder" as the unlawful killing of a human being with malice aforethought, which malice is express when there is a manifest and deliberate intention to unlawfully take the life of another, and implied where no considerable provocation appears, or when the circumstances show an abandoned and malignant heart, the term "malice" comprehends more than ill-will, hatred, or revenge, and means the intent to kill a human being with-

out legal justification or excuse, and under circumstances which do not mitigate the crime to manslaughter.

2. HOMICIDE—PRESUMPTIONS—MALICE.—Where a homicide is proved, and the evidence shows neither mitigation nor justification, malice will be presumed.

3. HOMICIDE — QUESTION FOR JURY — MALICE.—Where defendant, who was shown to have been hostile toward and to have made threats against deceased, provoked or invited an altercation with deceased while the latter was peaceably conversing with a friend on the sidewalk, and a struggle followed in which defendant was worsted, and defendant, when deceased was following him, picked up a gun, and told him to get out from behind the bar, and shot him, and while the latter was dying made a further expression of enmity against him, the evidence presented two conflicting inferences, one. of malice, and the other of absence of malice, and the question of malice aforethought was for the jury.

4. CRIMINAL LAW—QUESTION FOR JURY—MALICE.—Where the question of malice aforethought was determined by the jury adversely to defendant, and there was sufficient competent evidence to support the verdict, the supreme court cannot interfere.

[As to condition of mind of slayer which will reduce murder to manslaughter, see note in 134 Am. St. Rep. 726.]

APPEAL from a judgment of the Superior Court of the County of Cochise. Fred Sutter, Judge. Affirmed.

The facts are stated in the opinion.

Mr. Allen R. English and Mr. J. T. Kingsbury, for Appellant.

Mr. G. P. Bullard, Attorney General, and Mr. Leslie C. Hardy, Assistant Attorney General, for Respondent.

FRANKLIN, C. J.—Indictment for murder. The defendant was convicted of murder in the second degree. The appeal is from the judgment and order denying a motion for a new trial.

On trial of the cause no evidence was introduced by the defendant. A reversal of the judgment is urged because the evidence adduced by the state shows no element of murder. The point made is that the evidence discloses an absence of malice aforethought, and this is the only matter to be decided.

The homicide occurred in the town of Wilcox on the twenty-sixth day of June, 1912. The surgeon who examined the body of the deceased stated his death was caused by a bullet wound severing the main artery that supplies the brain, and which runs up by the side of the neck in the region where the bullet entered. It appears from the evidence that about six weeks previous to the time of the homicide the deceased had killed a dog belonging to the appellant, which occurrence had occasioned a feeling of hostility on the part of appellant toward Mr. Wiley, the deceased. This feeling of hostility was expressed by appellant on several occasions to different persons. These persons testified that appellant, upon being informed that Wiley had killed his dog, asserted to one that "he would get even with the —— that killed the dog." And to another that "he would fix the man that killed her."

On the day of the homicide Wiley, the deceased, was walking down one of the streets of Wilcox, on which was located the Midway saloon, a place in which appellant was employed. The deceased was leisurely walking along, stopping at different times to converse with some acquaintances. When he arrived in front of the Midway saloon he stopped and engaged in conversation with one C. C. McDuff. While so engaged the appellant opened the screen door of the saloon, and, putting his head out of the doorway in a very offensive manner, so the witnesses put it, "bleated like a sheep at Wiley." Thereupon appellant and deceased engaged in an altercation, followed by a physical struggle, were, the witnesses state it, scuffling about the saloon, and during which opprobrious epithets were bandied to and fro. During the struggle Wiley pressed the appellant's head against the jamb of the saloon door, and pushed him out on the sidewalk.

P. B. Clark, who was sitting in the saloon at the time, testified that appellant came back into the saloon, and went behind the bar, and the deceased proceeded to follow him behind the bar, and appellant said, "Don't come behind the bar," and picked up a gun, and said, "Get out from behind the bar," and the deceased kept going, and appellant shot him; that deceased threw his hand up, the witness observing blood streaming down his bosom, the deceased exclaiming,

"Oh, my God!" as he walked out of the saloon on to the sidewalk, where he fell, and died a few minutes later.

Another witness testified that shortly after the shooting appellant characterized the deceased by a vile epithet, and stated that the deceased came in the saloon, and caught appellant, and carried him to the door, and threw him out, and started to catch his gun, and he told him to stop. The evidence does not disclose that Wiley was armed in any way, and, while he was lying on the sidewalk in front of the saloon dying, the appellant was observed leaning with his elbows on the bar of the saloon looking out at Wiley.

Murder is the unlawful killing of a human being with malice aforethought. Such malice is express or implied. It is expressed when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied where no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart. Par. 172, Ariz. Pen. Code 1901.

The statute separates the felonious homicides into the two degrees of murder and manslaughter. Malice must therefore always exist in murder; the two degrees of murder being distinguished from manslaughter by being committed of malice aforethought. To ascertain, therefore, whether a felonious killing is murder or manslaughter, we have simply to inquire whether it was committed of "malice aforethought" or not. Bishop's New Criminal Law, sec. 673.

Many attempts have been made in the books to generally define malice; but, however accurate we may regard the definition, it does not furnish much practical help in the concrete case. Recognizing the little practical help given by any general definition of the term, our statute has furnished the criteria for determining its presence in the given case. It is present when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is present where no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

The law excuses or justifies a homicide in some instances and under certain circumstances, and, when upon the trial the homicide appears to be justifiable or excusable within

the terms of the statute, the person charged therewith must be fully acquitted and discharged.

The law also mitigates the unlawful killing of a human being from murder to manslaughter when such killing is done without malice. It is of two kinds: (1) Voluntary. In the commission of an unlawful act not amounting to a felony; or in the commission of a lawful act which might produce death in an unlawful manner, or without due caution or circumspection. Par. 176, Ariz. Pen. Code 1901.

It is the wisdom of divine Providence to deny men the philosopher's stone wherewith to solve the manifold complexities, and lay bare to view the mysteries of the mind and heart. And so the law furnishes no psychological test by which to determine directly the state of the mind, for in a sense it is unknowable. But the law does give the criteria for ascertaining the presence or absence of malice in the concrete case.

So malice aforethought relates not merely to the state of the mind of the person who unlawfully kills another, but to the moral aspects of the case as indicated by all the conditions and circumstances attending and characterizing the act. The circumstances may in law justify or excuse the killing, or they may mitigate it to manslaughter. The law defines the circumstances under which the killing of one person by another is justified, or excused, or so far extenuated as to reduce the crime to manslaughter. Such a killing is without malice aforethought, and it must follow that any other unlawful killing of one person by another is a killing with malice aforethought.

Wharton says that: "Malice in law does not necessarily mean hate, ill-will, or malevolence, but consists in any unlawful act, willfully done without just excuse or legal occasion, to the injury of another person. It may properly be said not to be a thing or entity, but rather a mental state or condition prompting the doing of an overt act without legal excuse or justification, from which act another suffers injury. Where the act is done with the deliberate intention of doing bodily harm to another, it is called express malice; otherwise the malice is inferred or presumed from the act. Evil intent is legal malice; so, also, is gross and culpable negligence whereby another suffers injury." Wharton on Criminal

Law, 11th ed., sec. 146. And the author says it is proper
to tell the jury that from certain circumstances—e. g., the
use of a deadly weapon, repeated and severe wounds, threats—
intent and malice may be rightly inferred as inferences of
fact. Wharton on Criminal Evidence, 10th ed., sec. 738.
Our only way of proving malice is by inferring it from cir-
cumstances. Wharton on Criminal Law, 11th ed., sec. 145.

Mr. Bishop says, whether we regard the question of malice
aforethought as of law or of fact, it relates to the condition
of the prisoner's mind, into which the witnesses cannot look;
therefore, it can never be the subject of direct testimony,
but either the court or the jury must infer it as a presump-
tion from the tangible facts in evidence. Bishop's New
Criminal Law, 8th ed., sec. 673A.

The legal import of the term "malice" extends beyond
and is more comprehensive than ill-will, hatred, or revenge.
It includes all states of the mind under which the killing
of a human being by another takes place without any cause
which will, in law, justify or excuse it, or mitigate the homi-
cide to manslaughter. And as malice, in connection with
the crime of killing, is said to be but another name for a
certain condition of a man's heart or mind and as no one
can look into the heart or mind of another, the only way
to decide upon this condition at the time of the killing is
for the jury to determine it from all the facts and circum-
stances surrounding the case. The killing being admitted
or proved beyond a reasonable doubt to have been done by
the accused, do the surrounding facts satisfactorily show any
cause which in law will excuse or justify the killing, or which
in law will mitigate the killing to manslaughter? If any
such cause is present in the case, there is no malice; otherwise
the jury would be justified in finding its presence in the case.

That the term "malice aforethought" in the definition of
murder· is confusing becomes obvious on an examination of
the innumerable cases dealing with the matter and the great
variety of opinion expressed on the subject. In early times
by English statutory provision the benefit of clergy was
denied those who committed murder, and the crime was prac-
tically limited to express malice existing prior to and inspir-
ing the killing; in other words, to a willful, deliberate, and

premeditated killing. Thus it was that the term acquired in the law of homicide a well-defined and technical meaning. But in view of its historical aspect, and in the light of its development by the interpretation of the courts and statutory enactment, and notwithstanding the approved definition of the crime of murder as the unlawful killing of a human being with malice aforethought still remains by statutory prescription, the crime is not limited to express malice, but includes implied malice also. If, as Mr. Bishop says, this malice aforethought relates to the condition of the prisoner's mind into which the witnesses cannot look, and therefore can never be the subject of direct testimony, the distinction between a justifiable or excusable homicide and the crimes of murder and manslaughter, and between an unlawful killing with malice aforethought and an unlawful killing without malice, ought to be sought not so much in the state of mind of the person who kills another but more logically in the circumstances attending and characterizing the act of killing. While in its essence "malice aforethought" was formerly a term having a technical meaning in the law, in the light of its modern development, and in its relation to the crime of homicide, the malice aforethought essential to the crime of murder has this broad general meaning—the intentional killing of one human being by another without legal justification or excuse, and under circumstances which in the law do not mitigate the crime to manslaughter. Such a killing is murder.

"If the homicide is proved, and the evidence adduced to establish it shows neither mitigation nor justification, malice will be presumed from the proof of the homicide; but the presumption is a rebuttable one, and may be overcome by evidence of alleviation or justification. If the evidence adduced to establish the homicide presents two conflicting inferences, one of malice, and the other an absence of malice, then it becomes a question of fact to be decided by the jury as to which aspect of the evidence is the real truth of the occurrence. As was remarked by Mr. Wharton, the question of proving malice is one of logic, and not one of formal law. 2 Wharton on Criminal Law, sec. 314. Text-writers generally deal with the presumption of malice arising from proof of the homicide as

a rule of evidence, rather than a principle of substantive law. See Greenl. Ev., sec. 34.'' *Mann* v. *State,* 124 Ga. 760, 4 L. R. A., N. S., 934, note, 53 S E. 324.

For a very extended and interesting review of ''malice aforethought'' in the definition of murder, see note to *State* v. *McGuire,* 84 Conn. 470, 38 L. R. A., N. S., 1054, 80 Atl. 761.

In the case before the court the killing was proved beyond a doubt to have been done by the appellant with a deadly weapon. It appears also that, while deceased was peaceably conversing with a friend on the sidewalk, the appellant provoked or invited the altercation and struggle occurring between himself and the deceased by his insulting conduct. Superadded is the evidence of hostile feelings and threats on the part of appellant toward the deceased, and an expression of enmity just after the shooting. Then the testimony photographs appellant calmly folding his arms across the bar of the saloon, and, as the stricken man staggered from the room with blood streaming down his bosom, watching unmoved his victim till he fell mortally wounded upon the sidewalk. Even with weak eyes one could discern the properties of malice here.

Whether the chastisement which deceased administered to appellant during the scuffle that took place in the saloon—occasioned as it was by appellant's reprehensible demeanor—furnished any considerable provocation for the killing, or that the killing was done in the heat of blood, or whether the evidence adduced shows excuse, justification, or mitigation, it was the province of the jury to determine under the facts as here presented.

The most that can be said for appellant is that the evidence presents two conflicting inferences, one of malice, and the other an absence of malice; but it was for the jury to say in which aspect of the evidence the real truth of the occurrence lay.

No complaint is made that the jury were not fully advised by appropriate instructions as to the law governing their duty in respect to the presence or absence of malice aforethought in the case. The question of malice having been determined by the jury, whose solemn duty it was to ascer-

tain its presence, or the want of it, and there being sufficient competent evidence to support the verdict, we cannot interfere.

Affirmed.

CUNNINGHAM and ROSS, JJ., concur.

NOTE.—On the question of "malice aforethought" in the definition of murder, what the term now means, and how the courts should deal with it in charging the jury, see note in 38 L. R. A., N. S., 1054.

The question of presumption of malice from killing is discussed in a note in 4 L. R. A., N. S., 934. And for presumption as to implied malice arising from act of killing, see note in 38 L. R. A., N. S., 1077.