[Crim. No. 3413. In Bank.—June 29, 1931.]

THE PEOPLE, Respondent, v. WILLIAM R. McINTYRE, Appellant.

Paul Taylor for Appellant.

U. S. Webb, Attorney-General, Ralph O. Marron, Deputy Attorney-General, Buron Fitts, District Attorney, and John Oliver, Deputy District Attorney, for Respondent.

RICHARDS, J.—This appeal is from a judgment of conviction of the defendant based upon the verdict of the jury finding him guilty upon each of three charges contained in an information filed by the district attorney of the county of Los Angeles. In count one the defendant was charged with the crime of murder in the second degree; in count two with the offense of driving a motor vehicle while under the influence of liquor, in violation of section 112 of the California Vehicle Act, making the same a felony; and in the third count of failing to stop and render aid to a person after colliding with and causing personal injury to such person, in violation of section 141 of said act, also a felony.

The facts out of which each of these charges arose were that on January 1, 1930, between the hours of 6 and 8 o'clock P. M., one Margaret Towers was struck by an automobile driven by the defendant at the intersection of Atlantic Boulevard and Hubbard Street in the county of Los Angeles. Mrs. Towers, accompanied by her daughter,

grand-daughters and grandson, was crossing Atlantic Boulevard from east to west in the pedestrian lane when she was struck by defendant's automobile and suffered the injuries which resulted in her immediate death. The defendant at and prior to the time of the casualty was accompanied in his car by a girl name Ruby Burroughs. After striking Mrs. Towers the defendant traveled about 100 feet and stopped his car and started back to the scene of the accident. When about halfway back he was met by a man who had witnessed the collision and who told him, "You have killed that lady," whereupon the defendant, without going farther, returned to his car and drove off. After going a short distance he was stopped by a man who asked if they had been drinking, to which it was replied by Ruby Burroughs that the defendant had taken a drink or two that afternoon; whereupon the man suggested that someone else should drive the car, and Ruby Burroughs undertook to drive it and did so for some distance, when the defendant resumed his place as the driver of the car, driving it to the home of a friend in Glendale, where certain incidents bearing upon the defendant's state of intoxication, to be hereinafter referred to, occurred.

The appellant makes a number of contentions upon this appeal. The first is that the trial court committed reversible error in permitting Ruby Burroughs to be called and examined as a witness for the People. In support of his objection to the calling and examination of this witness before the trial court the defendant put forward the claim that between the time of the commission of the offenses charged in the information and the date of the trial the defendant had married Ruby Burroughs and hence that at the time she was called and sought to be examined as a witness she was his wife, and for that reason incompetent to testify as a witness against him without his consent. In support of this claim the defendant offered evidence tending to show that a marriage ceremony under the provisions of section 79 of the Civil Code had taken place before a clergyman and without a license. Section 79 of the Civil Code provides: "When unmarried persons, not minors, have been living together as man and wife, they may, without a license, be married by any clergyman. A certificate of such marriage must by the clergyman be made and delivered to

54

the parties and recorded upon the records of the church of which the clergyman is a representative. No other record need be made." In further support of said claim the defendant offered certain evidence which, according to his contention, established that prior to the celebration of such purported marriage he and Ruby Burroughs had been living together as man and wife. This evidence, however, was sharply disputed by the prosecution, which produced quite convincing testimony of Ruby Burroughs' mother, or her employer, and of a number of other witnesses, showing that during the period of several months preceding the casualty out of which the charges against the defendant arose, and during which period he claimed to have lived with Ruby Burroughs in the relation of man and wife, she was living at home with her mother, where her clothing was kept, and from which home she was rarely absent at night, and then only at occasional week-ends; that her mother and her employer knew nothing of her relations with the defendant; that she was known to all of her friends and acquaintances as Ruby Burroughs, and · that other than her occasional and meretricious intercourse with the defendant they had never lived together as man and wife. █ The legislative intent in the adoption of section 79 of the Civil Code and in the assertion therein concerning the requirement as to persons seeking to avoid the effect of section 55 of the Civil Code requiring the solemnization of a marriage in the manner therein provided, was fully discussed by this court in the case of *Sharon* v. *Sharon*, 79 Cal. 633 [22 Pac. 26, 131], wherein the court clearly points out that the creation of the relation of husband and wife contemplates a course of conduct involving· the assumption of those marital rights, duties and obligations which are usually manifested by married people. In the case of *Campbell* v. *Campbell*, L. R. 1 Sc. Div. App. 200, 211, the subject of what would suffice to constitute cohabitation as husband and wife was quite aptly described as follows: "It is holding forth to the world by the manner of daily life, by conduct, demeanor and habit, that the man and woman who live together have agreed to take each other in marriage and to stand in the mutual relation of husband and wife; and when credit is given by those among whom they live, by their relatives, neighbors and acquaintances to these repre-

sentations and their continued conduct, then habit and repute arise and attend upon cohabitation. The parties are holden and reputed to be husband and wife.'' The occasional illicit intercourse of the defendant and Ruby Burroughs could not, therefore, have furnished the basis for their attempted marriage under the provisions of section 79 of the Civil Code, and it seems quite plain from the record herein that the sole reason why they went through the form of marriage prescribed by said section was in order to prevent the prosecution from calling and examining Ruby Burroughs as a witness in this case. ▆ The defendant's contention that upon making proof of the performance of the ceremony provided in section 79 of the Civil Code a sufficiently conclusive presumption arose that the marriage relation had been created and that such marriage could not be made the subject of a collateral attack, such as was made upon it in the instant case, has no merit. The defendant having undertaken to disqualify Ruby Burroughs as a witness for the prosecution upon the ground that at the time she was his wife and that she had become so through conformity with the provisions of section 79 of the Civil Code, had cast upon him the burden of showing to the satisfaction of the trial court that his prior relations with her were such as to show that they had been living together as man and wife. Having failed to sustain that burden the defendant was not entitled to urge such disqualification, and the trial court committed no error in requiring Ruby Burroughs to be sworn and testify.

▆ The next contention of the defendant is that the evidence was insufficient to support the verdict of guilty of murder in the second degree. We do not deem it necessary to review in detail the evidence in the case further than to state that the practically uncontradicted evidence in the case shows that the defendant ran down and killed the deceased while driving his machine upon the wrong side of the street and while crossing a pedestrian intersection where the decedent was walking with her family in plain sight and where she had the right to be. No sufficient justification or excuse was offered by the defendant for his conduct in the foregoing regard and for the reckless driving of his machine which resulted in the decedent's death. It is the defendant's contention that the evidence of his

act and conduct at the time was at most only sufficient to justify a verdict of manslaughter. But this in our opinion was a matter which, under proper instructions from the trial court, it was the function of the jury to decide.

In this connection it becomes necessary to also consider the evidence offered in support of each of the other two counts contained in the information, since in order to justify a verdict of guilty of murder in the second degree, as distinguished from a verdict of manslaughter, it would be necessary to show that the act of the defendant, if involuntary, was done in the commission of an unlawful act amounting to a felony. (Pen. Code, sec. 192, subd. 2.) We shall, in this connection consider the further contention of the defendant that the evidence was insufficient to sustain either the second or third count of the information. By the second count the defendant was charged with driving an automobile while under the influence of intoxicating liquor, in violation of section 112 of the California Vehicle Act. The defendant insists that the evidence is insufficient to support this charge. There is evidence, however, given by Ruby Burroughs to the effect that the defendant before starting out with her upon the fatal ride took one or two drinks from a bottle or flask of whisky which he carried with him. There is also the evidence of another witness that during the course of the afternoon the defendant drank some wine; and added to this there is evidence that within a short time after the casualty the defendant was seen by several witnesses at the home of his friends in Glendale and that he was then in a state of maudlin intoxication. We think this evidence abundantly sufficient to sustain the verdict of the jury against the defendant upon the second count in the information, and also sufficient to establish the fact that the defendant at the time he struck and killed the woman was engaged in the commission of a felony under the provisions of section 112 of the California Vehicle Act.

The defendant's next contention relates to the insufficiency of the evidence to justify his conviction upon the third count of the information charging his failure to stop and render aid to a person after having collided with and caused personal injury to such person, in violation of section 141 of the California Vehicle Act. The evidence in the case showed that the defendant stopped his car after

the impact and within about 100 feet of the place of its occurrence; that he started back toward the scene of the accident but when about halfway was met by a witness who informed him that he had killed the woman; whereupon he immediately and without either verifying the statement or otherwise approaching and offering to render aid, as required by section 141 of the California Vehicle Act, turned immediately and left the scene without any further pretense or effort in the way of a compliance with the requirements of said section of the California Vehicle Act. We are satisfied that from this showing the jury were entitled to return a verdict finding the defendant also guilty under this count in the information. ■ We do not, however, hold that the charge and conviction of the defendant under the third count of the information would have rendered him liable to and properly convicted of the charge of murder in the second degree, since the unlawful act of the defendant in failing to render aid to the person whom he had previously struck down and, as it appeared, had killed occurred after and not in the commission of the homicide. This constitutes the distinction between murder in the second degree and manslaughter. ■ The conviction of the defendant of the former crime must, therefore, rest solely upon his guilt of the charge of driving an automobile while under the influence of intoxicating liquor immediately prior to and at the time of his collision with the deceased. While we have hereinbefore held the evidence sufficient to sustain his conviction of this offense, we are constrained to hold from a consideration of the entire record that the evidence in that regard is of such doubtful force as to have upheld a verdict of the jury either way, and this being so we are disposed to give to this defendant the benefit of the doubt and to hold that a verdict of manslaughter would have sufficiently satisfied the course of justice in the particular situation herein presented.

It is, therefore, hereby ordered that as to count one of said information the judgment is hereby so modified as to find and adjudge the defendant guilty of manslaughter instead of murder in the second degree. The cause as to said count is remanded to the trial court with instruction to enter a judgment of manslaughter against the defendant and thereupon to pronounce judgment upon him as

prescribed by law. Otherwise the judgment herein is affirmed.

Shenk, J., Seawell, J., Preston, J., and Langdon, J., concurred.

Rehearing denied.