[Crim. No. 4294. First Dist., Div. Two. Nov. 18, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ALBANIE DENNIS LAMOTHE, Defendant and Appellant.

Albanie Dennis Lamothe, in pro. per., and Kenneth C. Zwerin, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—Defendant appeals from a judgment of conviction of second degree murder entered upon a jury verdict.

On March 10, 1962, in response to an emergency call, an ambulance and a police officer were dispatched to an apartment occupied by appellant and his wife, Shirley. There they found Linda Jean Moody, a 16-month-old baby. She was unconscious and her breathing was irregular.

The child was taken to the hospital. Her body was filthy and covered with bruises, some of which appeared to be quite recent.

Brain damage was indicated and surgery was performed. This revealed two large subdural hematomas, one on each side of the brain. One was older than 24 hours and the other was quite recent. The brain tissue was soft, swollen and mushy and, according to the medical testimony, was due to repeated injuries to the head.

The child died three days later. The autopsy revealed that the immediate cause of death was acute cerebral edema, traumatic in origin.

The first physician who saw the child at the hospital testified that she "was covered with bruises over the forehead, top of the head and down the face and the arms and legs"; that some of the bruises were newly inflicted but many of them appeared to be at least two or three days old; that in his opinion the child had suffered rather extensive trauma over some period of time. The consensus of the expert testimony was that the child's death resulted from a course of beating, complicated by a general neglected condition and malnutrition.

Linda Jean was not quite 3 months old when Shirley married appellant. The child's father was one Dale Moody.

On July 2, 1961, when she was only 8 months old, appellant administered a severe beating to Linda, slapped her across the face, leaving bruise marks on her face and ear, and

a cut inside her mouth. He also beat her little finger with a stick. The physician who treated her for these injuries testified as to her condition when she was brought into the hospital on that occasion.

Shirley testified that appellant's treatment of Linda became progressively worse, that he would often hit the child with his fist and kick her and would pick her up and throw her head against the floor. This was corroborated by several other witnesses, among whom was the appellant's own sister.

Appellant admitted to the investigating officers that he struck the child at least three or four times a week over all parts of its body during the three or four months prior to March, 1962.

On March 10, 1962, appellant threw the child head first to the floor on three or four occasions, the last time rendering her unconscious. He also hit her in the mouth with his closed fist.

However, appellant testified that Linda Jean died as the result of an accident. He stated that on the afternoon of March 10, 1962, he was sitting at the kitchen table and Linda Jean was standing beside him on the bench when she unaccountably fell backward hitting her head on the floor. He denied ever using violence toward the child except an occasional spanking. He testified that Shirley had beaten the child on March 10th.

 *Character evidence.* Two witnesses called by the prosecution, Mr. and Mrs. Carpenter, testified on cross-examination that Shirley's reputation for truthfulness was bad. Two witnesses called by appellant, Mr. and Mrs. Hardesty, testified on direct examination to the same effect.

The prosecution made no effort to refute this testimony. In his summation to the jury, the prosecuting attorney stated: "You put her [Shirley] on the witness stand now and *you expect you can believe everything she said?* Obviously there were contradictions in the story. Obviously she told a different story when this first happened and at least two or three people have said her reputation for truth and veracity in the community in which she resided was not good. ... *I think there is no question in the minds of anybody that that woman morally is as guilty as the defendant here for the death of that baby,* and possibly legally so." (Italics ours.)

The trial court did not give appellant's proposed instruc-

318

tion on character evidence.[1] This instruction is not applicable to the facts herein because it has to do with the weighing of evidence both favorable and unfavorable to the reputation of a witness and the effect to be given to evidence that such reputation has not been discussed or questioned. There was no evidence favorable to Shirley's reputation to weigh or consider and the only character witness who was questioned about any discussion of the subject answered that Shirley's reputation *had* been discussed in his presence.

However, even in the absence of a request, the trial judge has the duty in a criminal case to instruct the jury as to all pertinent general principles of law. (*People* v. *Jackson* (1963) 59 Cal.2d 375, 380 [29 Cal.Rptr. 505, 379 P.2d 937]; *People* v. *Holt*, 25 Cal.2d 59, 64 [153 P.2d 21]; *People* v. *Warren*, 16 Cal.2d 103, 116-117 [104 P.2d 1024].)

The trial court did give the jury lengthy instructions concerning the factors to be considered in determining the credibility of witnesses, including the "inclinations" of such witnesses. A specific instruction to the jury that, in weighing Shirley's testimony, it could consider her reputation for veracity would not have added anything to the charge.

While specific instructions as to flight, oral confessions, sex offenses, testimony of accomplices, etc., *must* be given when pertinent, we do not think that appellant was prejudiced in the instant case by the failure of the trial court to give a specific instruction relating to character evidence.

*Instructions on circumstantial evidence.* Appellant contends that the trial court, on its own motion, should have instructed the jury that circumstantial evidence must be irreconcilable with innocence in order to furnish a sound basis for conviction.

The validity of this contention depends upon whether circumstantial evidence is wholly or substantially relied upon

[1]This instruction is adapted from CALJIC No. 54-C and is as follows: "When an attempt is made to impeach a witness by showing that his general reputation in the community where he resides for truth, honesty and integrity is bad, it is proper for you to consider not only such evidence and all evidence of a contrary reputation, but also the fact, if it be a fact, that among persons who know the witness, his reputation for truth, honesty and integrity has not been discussed or questioned; because either the absence of discussion of such a topic or the fact that a person's character in such respects has not been questioned will support an inference of good reputation if, in your discretion, you should choose to draw that inference."

for proof of guilt. (*People* v. *Yrigoyen*, 45 Cal.2d 46, 49 [286 P.2d 1] ; *People* v. *Bender*, 27 Cal.2d 164, 175 [163 P.2d 8].)

The Supreme Court, in *People* v. *Malbrough* (1961) 55 Cal.2d 249, 250-251 [10 Cal.Rptr. 632, 359 P.2d 30], has stated the rule as follows: "It is the general rule that a trial court is not required to instruct on the rules of law applicable to circumstantial evidence where the alleged circumstantial evidence is incidental to, and corroborative of, direct evidence. [Numerous citations.]"

It is our opinion that, in the instant case, the eyewitness testimony of appellant's wife and the additional direct evidence detailed above constituted the basis for appellant's conviction and that the circumstantial evidence was incidental to such direct evidence and only served as corroboration thereof.

*People* v. *Masters* (1963) 219 Cal.App.2d 672 [33 Cal.Rptr. 383], involves this same point. The court stated, at page 681: "The circumstantial evidence in the record consisting of the incidents and events preceding the robbery, as well as the finding of the revolver the day after the robbery in the proximity of the area where Masters was arrested, were, at most, merely corroborative. These circumstances were not necessary to the establishment of appellant's guilt, nor can it be said, in the light of the record, that the People relied wholly or substantially on such evidence." In that case, the defendant was not the actual robber but he drove the "getaway" car. His defense was that he did not know that a robbery had occurred.

Moreover, the trial court in the instant case, on its own motion, instructed the jury as follows: "If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt."

■ *Excusable homicide instruction.* Appellant himself offered and the court gave an instruction on "excusable homicide" which was adapted from CALJIC No. 320.[2] Never-

---

[2]The instruction given is as follows: "The killing of a human being is excusable and not unlawful when committed by accident and misfortune in doing any lawful act by lawful means and without any unlawful intent and where the person causing the death acted with that

theless, appellant's present counsel (court appointed) criticizes the giving of this instruction on the ground that it intensified the death in the minds of the jury. No authority is cited in support of such contention. We find it to be without merit.

In his closing brief, appellant contends for the first time that the instruction on "excusable homicide" should have included a reference to the provision in section 195 of the Penal Code which relates to "lawfully correcting a child."

The portion of the section referred to is as follows: "Homicide is excusable ... in lawfully correcting a child ... with usual and ordinary caution, ..."

There is no evidence to support the giving of any specific instruction on this subject. Appellant made no contention nor did he testify that he was "correcting" the child when she sustained the fatal injury. Nor did the child's mother give any such testimony.

It is true that appellant justified his physical mistreatment of the child on other occasions on the ground that he was "correcting" her but this was not his excuse or explanation for his conduct on the fatal day.

█ *Negligence of third person.* Appellant also criticizes the giving of an instruction to the effect that it was not a defense to the charge against him that someone other than himself (his wife) was guilty of negligence which contributed to the death of the child *if* his "own conduct was a proximate cause of the death and if it constituted manslaughter."

This instruction is in the exact wording of CALJIC No. 313. Appellant testified that he stood the child up on the bench, although he was well aware that her sense of balance was deficient and that she fell frequently. He stated that he was worried that she might fall from the bench but that he put her there because his wife told him to do so.

Even if the jury had chosen to believe appellant's story and had exonerated him of murder, it was nonetheless entitled to consider whether his conduct amounted to criminal

care and caution which would be exercised by the ordinarily careful and prudent individual under like circumstances.

"Excusable homicide is distinguished from felonious homicide in that to be excusable the killing of the human being must have been by both accident and misfortune. Even though the death was accidental and may not have been intended or anticipated, the homicide will not be excused if it was caused by an unlawful act which might produce death, in an unlawful manner, or without due caution and circumspection."

negligence which was a contributory cause of death and would accordingly warrant a verdict of manslaughter. The trial court was required to instruct on the elements of manslaughter as well as murder.

Finally, appellant contends that, irrespective of the foregoing alleged errors, the offense should be reduced to manslaughter. (Pen. Code, § 1181, subd. 6.) We do not agree.

The power of an appellate court to order such reduction may be exercised only when it finds the evidence to be insufficient as a matter of law to sustain the essential finding, which in this case is "malice aforethought." (Pen. Code, § 187; *People* v. *Matlock*, 51 Cal.2d 682, 698 [336 P.2d 505, 71 A.L.R.2d 605]; *People* v. *Deloney*, 41 Cal.2d 832, 837 [264 P.2d 532].)

Such malice may be either express or implied. It may be implied when no considerable provocation for the killing appears or when the circumstances attending the killing show an abandoned and malignant heart. (Pen. Code, § 188.) The evidence is amply sufficient to support a finding of "malice aforethought."

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 29, 1964.