411 P.2d 448

**STATE of Arizona, Appellee,**

**v.**

**William Patrick CHALMERS, Appellant.**

No. 1410.

Supreme Court of Arizona.

En Banc.

Feb. 24, 1966.

Rehearing Denied March 29, 1966.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, Former Atty. Gen., Phoenix, Norman E. Green, County Atty., of Pima County, Carl Waag, Deputy County Atty., Tucson, for appellee.

Robert Royal, Tucson, Richard Herbert, Phoenix, for appellant.

LOCKWOOD, Justice.

Defendant was charged with the following criminal offenses: (1) Murder for the killing of Adeline Huerta; (2) Murder for the killing of Rosalina Apodaca; (3) Manslaughter for the killing of Adeline Huerta by driving an automobile with gross negligence while in the commission of unlawful acts not amounting to felonies; (4) Manslaughter for the killing of Rosalina Apodaca by driving an automobile with gross negligence in the commission of unlawful acts not amounting to felonies; and three counts of assault with a deadly weapon, one each with regard to Joe S. Huerta, Joey A. Apodaca, and Jerry Kaufman, charging that the defendant committed the assault with a deadly weapon by striking and injuring each of the named persons with a 1955 Chevrolet motor vehicle.

The case was tried to a jury. At the close of the State's case, defendant's counsel moved the court to direct a verdict of not guilty on all seven counts of the information, which motion was denied. At the close of defendant's case the matter was submitted to the jury, which returned

a verdict of guilty of each of the two counts of murder in the second degree, and each of the three counts of assault with a deadly weapon. No verdict was returned on either of the two counts of manslaughter. Defense counsel's motions for dismissal or in the alternative for a new trial were denied. Defendant now appeals from the final judgment of guilty, from the order denying the motion for a directed verdict and from the order denying a new trial.

The facts of the case are as follows: The defendant was driving his Chevrolet automobile at approximately 12:30 a. m. on April 24, 1963 in a northerly direction on Oracle Road near the intersection of Wetmore Road which is located in Pima County, Arizona. Oracle Road is a two lane highway at and near the location where the collision shortly thereafter occurred.

The Chevrolet car was traveling at a speed estimated between eighty and one hundred miles per hour. It passed several other cars moving in the same direction, and in order to do so crossed into the left or southbound lane. Two vehicles which were moving in a southerly direction were forced to leave the roadway because the Chevrolet car was in the southbound lane. The first southbound vehicle was a pickup truck with a camper body, and the second was a Pima County Sheriff's patrol car. The Chevrolet car swerved back into the right lane after forcing the patrol car off the road, and again into the left lane where it shortly thereafter collided with two vehicles moving in a southerly direction in the southbound or left lane.

As a result of the collision two passengers in one of the cars involved in the collision were killed, the driver and one other passenger were injured. The driver of the second car involved was also injured. A motion to dismiss both of the murder counts was denied, and the case was thereafter tried by a jury with the results above stated.

Defendant presents only one question, viz., whether the driver of a vehicle who causes a death can be charged with and convicted of murder in view of the present vehicle manslaughter statute (A.R.S. § 13-456 A. 3).[1] In brief, defendant's argument is that by amending the manslaughter statute in this fashion the Legislature removed by implication from the scope of

---

1. A.R.S. § 13-456, defining kinds of manslaughter was amended by the Legislature in 1957 by adding to the two original "voluntary" and "involuntary", a third category described in subparagraph A.3 as follows:

"3. In the driving of a vehicle:

"(a) In the commission of an unlawful act, not amounting to felony, with gross negligence; or in the commission of a lawful act which might produce death in an unlawful manner, and with gross negligence.

"(b) In the commission of an unlawful act, not amounting to felony, without gross negligence.

the statute regarding murder,[2] an unlawful killing of a human being in the driving of a motor vehicle.

■ Defendant recognizes that repeals by implication are not favored. However he maintains that a statute, or a portion of a statute will be repealed if it appears that the Legislature could not have intended the two statutes to be contemporaneously operative, even though such intent was not expressly stated. He cites and relies upon State v. Morf, 80 Ariz. 220, 295 P.2d 842 (1956). Morf involved the interpretation of the previous statute relating to negligent homicide (A.R.S. § 28–691, now repealed). That statute provided that a person operating a motor vehicle which caused the death of a person within a year when such vehicle was driven in reckless disregard of the safety of others, should be guilty of negligent homicide, a misdemeanor. This court pointed out that criminal negligence was an element of the misdemeanor negligent homicide statute. Without precisely defining the term "criminal negligence" it was held that the negligence must be of a more gross and reckless nature than is required in civil cases. This court found that there was no substantial difference between the criminal

negligence required to convict under both the negligent homicide statute and that portion of the manslaughter statute designated as "involuntary," which requires the commission of an unlawful act not amounting to a felony or the commission of a lawful act which might produce death in an unlawful manner, or *without due caution and circumspection*. In effect, Morf concluded that the element of criminal negligence was identical in both the involuntary manslaughter statute and the negligent homicide statute and therefore the latter statute by implication repealed the former with regard to death resulting from criminal negligence in the operation of a motor vehicle.

In 1957 the Legislature repealed the negligent homicide statute (A.R.S. § 28–691), and in the same act amended the felony manslaughter statute by adding a third kind, viz., manslaughter in the driving of a vehicle (§ 13–456 A.3, supra).

The new statute contains several elements not included in the previous negligent homicide act. It defines manslaughter in the driving of a vehicle as (1) in the commission of an unlawful act not amounting to a felony *with gross negligence* or (2) in the commission of a law-

2. A.R.S. § 13–451. Murder and Malice aforethought defined
  "A. Murder is the unlawful killing of a human being with malice aforethought.
  "B. Malice aforethought may be express or implied. It is express when

there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears or when the circumstances attending the killing show an abandoned and malignant heart."

ful act which might produce death in an unlawful manner, *with gross negligence,* or (3) in the commission of an unlawful act not amounting to a felony *without gross negligence.* The first two requirements necessitate the element of gross negligence while the third involves merely the commission of a misdemeanor without that element.

The defendant here was charged with the commission of willfully and unlawfully operating a motor vehicle in an unlawful manner with gross negligence and in the commission of unlawful acts not amounting to felonies. Hence we are only concerned with a comparison with that portion of the statute defining as manslaughter the driving of a motor vehicle in the commission of an unlawful act not amounting to a felony with *gross negligence.*

The jury returned verdicts of guilty of second degree murder on counts one and three; on counts two and four which related to manslaughter there is no specific verdict rendered, and on counts five, six and seven relating to assault the verdict in each case was "guilty". Defendant apparently does not in his appeal question the verdicts finding him guilty of assault. His sole objection is that the amendment of the manslaughter statute repeals by implication inclusion in the crime of murder a death caused by *operation of a motor vehicle with gross negligence.*

Defendant claims the elements constituting a crime for causing a death by operation of a motor vehicle are included in both subsection 3 of the manslaughter statute, and in the general murder statute.

Defendant reasons thus: the motor vehicle subsection of the manslaughter statute requirement is that a death result (1) *from the driving of a motor vehicle* with gross negligence while either committing "an unlawful act not amounting to a felony", or (2) "committing a lawful act which might produce death in an unlawful manner." He maintains that the murder statute requirement is that death result (1) *from the driving of a motor vehicle* "when no considerable provocation appears" or (2) "the circumstances attending the killing shows an abandoned and malignant heart." He contends that with regard to the elements of implied malice, the elements of "no considerable provocation" or "circumstances attending the killing which show an abandoned and malignant heart" are practically identical. His reasoning is that negligence is an involuntary state of mind and that the phrase "no considerable provocation" likewise means "involuntary". His assumption is that any individual who would drive a motor vehicle with gross negligence either while committing an unlawful act not amounting to a felony, or while committing a lawful act which might produce

death in an unlawful manner is acting "with an abandoned and malignant heart."

Thus his conclusion is that the substantial elements required as proof of the offense of murder and of manslaughter in the driving of a motor vehicle are identical and that the latest expression of the Legislature, i. e., subsection 3 of the manslaughter statute, by implication repeals application of the murder statute in the case of a death resulting from the driving of a motor vehicle.

■■ We do not agree with defendant's theory. A.R.S. § 13–455 defines manslaughter as the unlawful killing of a human being *without malice*. A.R.S. § 13–451 defines murder as the unlawful killing of a human being *with malice aforethought*. Both of these sections are specific and unequivocal. Neither has been expressly repealed by the Legislature. By statute it is provided that the malice aforethought required for murder may be express or implied. It is express when a deliberate intent is shown to take away the life of a person unlawfully. It may be implied "when no considerable provocation appears", or when the circumstances show "an abandoned and malignant heart." In either case malice is an essential element of the crime of murder. It is specifically not an element required for the crime of manslaughter. Thus subparagraph 3 of the manslaughter statute is applicable only

when there is no showing of malice, express or implied.

■■ On the other hand, the definition of murder, which requires the element of malice aforethought, does not negative a homicide committed in the operation of a motor vehicle if malice, express or implied be shown, since this element is lacking in the manslaughter offense. There is no merit to defendant's argument that the amendment to the manslaughter statute repealed by implication any application of the murder statute when a death is caused by the operation of a motor vehicle with malice aforethought.

■ We think there is a more serious question involved. At the time the appeal was taken, this Court was committed to the proposition that wanton and reckless conduct, in utter disregard of the safety of others and of himself, on the part of a person driving a motor vehicle, was sufficient to supply the willful and unlawful intention to inflict bodily injury upon another if such occurred. Brimhall v. State, 31 Ariz. 522, 255 P. 165, 53 A.L.R. 231 (1927). However, in State v. Balderrama, 97 Ariz. 134, 397 P.2d 632 (1964) we expressly overruled Brimhall so far as it held that evidence of negligent conduct may be sufficient to prove the criminal intent with which an act is done. This being so, in a prosecution for murder, the element of malicious intent may

not be shown by a proof of gross negligence in the operation of a motor vehicle which produces the death of another person.

In view of the fact that the crime of manslaughter in the driving of a vehicle may occur by the commission of an unlawful act not amounting to a felony and *without gross negligence,* it is obvious that a mere showing that there was no considerable provocation for the killing of a human being under such circumstances cannot supply the implied malicious intent to constitute murder.

■ There remains the Legislative provision that in the crime of murder malice may be implied "when the circumstances attending the killing show an abandoned and malignant heart." This term also occurs in many other jurisdictions in defining the offense of murder. However, we have found no case which would indicate that gross negligence alone would constitute such conduct as appears to be contemplated when referring to *"an abandoned and malignant heart."* The latter phrase seems to mean conduct by the use of a weapon or other appliance likely to produce death, and by the brutal and bloodthirsty use of such instrumentality. Daniels v. State, 197 Ga. 754, 30 S.E.2d 625 (1944) ; People v. Endner, 73 Cal.App.2d 20, 165 P.2d 712 (1946), (evidence of a long course of physical abuse of the victim, defendant's mother, and evidence of a severe beating which caused her death) ; People v. Lamothe, 222 Cal.App.2d 314, 35 Cal.Rptr. 122 (1963), (evidence that defendant had slapped and beat his stepdaughter, a sixteen-month old baby, to such an extent that she died from a brain injury, and that defendant had frequently struck and thrown the child on the floor, rendering her unconscious.)

■ We hold that subparagraph A.3 of § 13–456 withdraws any application of the general murder statute (§ 13–451) to a death caused by a vehicle, unless accomplished with malice aforethought, and that negligent conduct cannot be sufficient to imply malice.

■ In the instant case, there is sufficient evidence for the jury to find gross negligence and utter disregerd of the safety or welfare of any persons who might have been in the vicinity of defendant's car at the time of the collision. There was no evidence in the record tending to show that defendant had by the use of any weapon indulged in vicious or brutal conduct which might support a finding of "an abandoned and malignant heart." There was no evidence that defendant deliberately used his Chevrolet car for the purpose of a weapon to inflict injury upon another. Nor is there evidence tending to show that defendant had used any other instrumentality as a weapon for indulging in vicious or brutal conduct, which could sup-

port a finding of "an abandoned and malignant heart." As stated in Balderrama, supra, criminal neglect can supply the place of intent only where the legislative power has expressly so provided. It therefore follows that under all the facts the defendant was not guilty of murder. Nor, under the holding in Balderrama, supra, could he be guilty of an assault with a deadly weapon. Even though defendant failed to raise this issue on appeal, it is such fundamental error as to require a reversal in any event. It may be that because of the utter disregard of the defendant for the consequences of his operation of an automobile which could and did cause a senseless tragedy in loss of life and in personal injuries, he should be subject to severe criminal responsibilities. However, as stated in Balderrama, supra, if there is an inadequacy of the present laws dealing with criminal responsibility in cases of this kind the remedy lies with the Legislature.

Judgment of the lower court is reversed and the case remanded for further proceedings in accordance with this opinion.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and McFARLAND, J., concurring.

UDALL, Justice (specially concurring).

I concur in the majority opinion as to the law set forth but disagree with the application of the facts of this matter to that law. Because of the complete agreement by other members of this Court, I do not desire to file a dissent in this matter but would like to express my views as to why the jury verdict should be upheld.

A.R.S. § 13–451 states:

"A. Murder is the unlawful killing of a human being with malice aforethought.

"B. Malice aforethought may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears *or when the circumstances attending the killing show an abandoned and malignant heart*. [Emphasis supplied.]

Thus, the requirement of malice necessary to convict for the crime of murder in Arizona may be express or implied. Malice may be inferred from the circumstances attending the crime as manifested by an abandoned and malignant heart which is equivalent to an express intent to murder. The requisite of abandoned and malignant heart is synonymous with a reckless and wanton disregard of obvious human risk. In other words, where the circumstances demonstrate a plain and strong likelihood that death or great bodily injury may result, an accused may be tried for murder as such conduct implies malice.

The majority opinion concludes that "[t]here was no evidence in the record tending to show that defendant had by the use of any weapon indulged in vicious or brutal conduct which might support a finding of 'an abandoned and malignant heart.'" This conclusion supplants the determination of the jury which, after hearing the evidence, rendered a verdict convicting defendant of second degree murder. The jury was instructed and found that defendant's conduct distinctly manifested "an abandoned and malignant heart" necessary to convict him of murder.

We have in prior cases consistently and frequently held that the requirement of malice is a question of fact for the jury to determine. State v. Rivera, 94 Ariz. 45, 381 P.2d 584; State v. Preis, 89 Ariz. 336, 362 P.2d 660; Bennett v. State, 15 Ariz. 58, 136 P. 276. Where there has been a conviction the evidence must be considered in a light most favorable to the state and to upholding that conviction. State v. Rivera, supra; Macias v. State, 36 Ariz. 140, 283 P. 711. While there are no Arizona cases directly on point, we stated in Steffani v. State, 45 Ariz. 210, 217, 42 P.2d 615, where the defendant was prosecuted for manslaughter by automobile:

"The law requires one operating an automobile on the public highway at all times to have it under control, and this is especially true where cars are approaching each other from different directions, with bright headlights calculated to interfere with one's vision. *A speed under such circumstances might be reckless and wanton* which in the absence of such blinding headlights would be reasonable and prudent. *So we cannot say, as a matter of law, that the court was not justified in submitting the question of speed and recklessness to the jury.*" [Emphasis supplied.]

The case law would indicate that the presence or absence of malice, express or implied, is to be left to the jury, and unless there is no reasonable basis for its finding, this Court will not reverse the jury's verdict.

The following cases from other jurisdictions have held, discussed or suggested that driving while intoxicated and speeding may be sufficient to charge and convict a person of second degree murder. People v. McIntire, 213 Cal. 50, 1 P.2d 443; State v. Palmer, 197 N.C. 135, 147 S.E. 817; Goodman v. Comm., 153 Va. 943, 151 S.E. 168; Norman v. State, 121 Tex.Cr. R. 433, 52 S.W.2d 1051 (felony murder rule); State v. Massey, 20 Ala.App. 56, 100 So. 625; Ware v. State, 47 Okl.Cr. 434, 288 P. 374; Hyde v. State, 230 Ala. 243, 160 Sò. 237; State v. Trott, 190 N.C. 674, 130 S.E. 627, 42 A.L.R. 1114; State v. Goldberger, 118 Conn. 444, 173 A. 216;

State v. Shepard, 171 Minn. 414, 214 N.W. 280; See generally 99 A.L.R. 756.

In A.R.S. § 13–451 there is no requirement the state must show that defendant deliberately used his automobile as a weapon to inflict injury. To construe the statute to require that "the use of a weapon or other appliance likely to produce death, and by the brutal and bloodthirsty use of such instrumentality" is too narrow a construction and would seriously hinder prosecutions for murder where the conduct of an accused is in wilful disregard of unreasonable human risk.

The facts of this case considered in light of the applicable law would indicate the jury verdict in this matter should be affirmed. There was testimony from several witnesses that the accused was driving between 80 and 100 miles per hour just prior to the accident. There was testimony the accused had been drinking prior to the accident; that he drove in the wrong lane for a considerable distance and that two vehicles had to leave the road to avoid a collision with defendant's vehicle. The evidence showed there were no tire skid marks on the road surface which would indicate the accused attempted to stop or slow down prior to the collision, and there was testimony the accident occurred primarily in the wrong lane or close to the center line when the other driver was trying to evade defendant's car. These cumulative facts, as presented to the jury, resulted in a conviction of second degree murder. Where the question is so close as here, and the verdict is supported by the evidence, this Court should exercise caution and restraint in reversing the jury's verdict.

The facts would indicate the accident was not the typical automobile accident where a driver makes a gross error of judgment and is thus tried for manslaughter. Rather, the conduct surpasses the usual vehicle manslaughter case and demonstrates characteristics of wanton conduct and an abandoned and malignant heart. The jury found that the accused should have known of the plain and obvious likelihood that death or great bodily injury could have resulted from driving his automobile in such a manner.

While I feel the conviction of second degree murder by the jury should be affirmed under these facts, nonetheless I yield to the opinion of the majority and hold that the judgment of the lower court is reversed, and that the case be remanded to the trial court for further proceedings in accordance with the majority opinion.