UNITED STATES of America,
Appellee,

v.

Charles Thomas HAINES, Appellant.

No. 24719.

United States Court of Appeals,
Ninth Circuit.

April 9, 1970.

Richard J. Dowdall (argued), of Dowdall, Harris, Hull, & Terry, Tucson, Ariz., for appellant.

Stanley Patchell (argued), Asst. U. S. Atty., Jo Ann D. Diamos, Asst. U. S. Atty., Richard K. Burke, U. S. Atty., Tucson, Ariz., for appellee.

Before MERRILL and KOELSCH, Circuit Judges, and * WILKINS, District Judge.

PER CURIAM:

Charles Thomas Haines has appealed from a conviction for aggravated assault.[1] On the evening of November 28, 1968, Wilbur Steele and his wife, both Indians, were leaving Mark's Tavern near Globe, Arizona, in their Mustang automobile when they were approached by a trio of youths in a Camaro "sports" car. Steele, who had been drinking, evidently agreed to race the youths and he proceeded to the specified starting place on the Show Low road. However, an altercation occurred in which one of the boys struck Steele in the face. Steele then drove back to the tavern, followed by the Camaro. While Steele was in the tavern, the youths insulted and threatened Mrs. Steele ("We will kill you both, you Squaw"), broke the radio antenna on the Mustang and later threw a rock through its window. After this second encounter, the Steeles left the tavern and started east onto the reservation. The Camaro gave chase and, after several attempts, forced the Mustang partially off the road. The Mustang came to rest with its front end in the barrow pit at the north side of the road and its rear wheels still on the pavement. The Steeles

---

* Hon. Philip C. Wilkins, United States District Judge, Sacramento, California, sitting by designation.

1. Arizona Statutes §§ 13–241 and 13–245. Jurisdiction of the U.S. District Court was predicated on 18 U.S.C. § 1152 and 18 U.S.C. § 13, the Assimilative Crimes Act.

got out of the car and fled westerly along the road. The Camaro immediately turned around, drove up to the east side of the abandoned Mustang, backed up, turned out its lights, and started west towards Globe. After proceeding for a short distance it violently struck Mrs. Steele, and sped on without stopping.

The issues on this appeal all concern questions of sufficiency of evidence to support the verdict.

 Haines' principal contention enters upon the jury's implied finding of intent.[2] Pointing out that the night was dark, that Mrs. Steele was wearing dark clothing and that the Camaro's lights were off, he argues that the driver could not have seen her and consequently did not deliberately run her down. However, Mrs. Steele testified that she saw the Camaro when it approached her with its lights off; moreover, it appears that the lights of the Camaro, immediately before being extinguished, shown down the highway in the direction where Mrs. Steele was standing and that a car with its lights burning was approaching Mrs. Steele from the West.

We conclude that on the record the issue was one for the jury and that its determination must stand.[3]

Haines also urges that no proof was adduced to establish that he was the driver of the Camaro when Mrs. Steele was struck. We disagree. Haines, it was stipulated, owned the car and usually drove it. A witness put Haines in possession of the car at about 9:15 on the evening in question; she identified Haines as the person in the driver's seat and testified that the car was then at "Pinky's Bar", near Mark's Tavern. The continuity of succeeding events is such as to suggest Haines continued to operate the car throughout the evening.

We have examined the other two points raised by the defendant but conclude that the matters complained of did not constitute error. Both are based on the erroneous premise that the identity of Haines, as one of the three youths and as the driver of the Camaro, was not proved and could not be reasonably inferred.

Affirmed.

---

2. It is settled in Arizona that intent is an essential element of the crime of assault. State v. Balderrama, 97 Ariz. 134, 397 P.2d 632 (1964); State v. Chalmers, 100 Ariz. 70, 411 P.2d 448 (1966).

3. In this view, we of course take into consideration the evidence of the earlier events during the evening including not only the acts of physical violence toward Steele but also the threats to his wife.