523 P.2d 79

**STATE of Arizona, Appellee,**

v.

**Daniel MENDELL, Appellant.**

**No. 2808.**

Supreme Court of Arizona,
In Banc.

June 5, 1974.

Gary K. Nelson, Atty. Gen., by Cleon M. Duke, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by John F. Foreman, H. Allen Gerhardt, Jr., Deputy Public Defenders, Phoenix, for appellant.

STRUCKMEYER, Justice.

The appellant, David Mendell, was charged with and found guilty after trial by jury of second degree murder of a fourteen-month-old child, Matthew Scott Williams. He appeals.

As a ground of error, he asserts that there was not sufficient evidence on which a jury could find him guilty of second degree murder. The facts set forth in a light most favorable to sustaining the jury's verdict are that appellant was living with Mrs. Jacqueline Rae Williams, the mother of Matthew. Matthew was a child by a former marriage. Mrs. Williams worked an evening shift and appellant worked during the day. He would often take care of Matthew and her other five-year-old child while Mrs. Williams was working. On the evening of July 18, 1972, appellant called Mrs. Williams while she was at work and told her that Matthew had a stomach ache and was groaning. Mrs. Williams recommended Pepto-Bismol. A short time later, appellant called again and said that the child was no better. She then made arrangements to leave work and came home. After she arrived home, Mrs. Williams called a doctor, who directed that Matthew be taken to a hospital, but he was dead upon arrival.

The appellant was arrested and questioned by police officers. He told them that he had gone to bed that evening but had awakened when Matthew started to cry. While the baby was crying loudly, for some unknown reason he lost his temper and struck Matthew in the stomach twice with his open hand.

However, an autopsy performed by Dr. Heinz Karnitschnig disputed appellant's

statements. Dr. Karnitschnig testified in part as follows:

"Q. Doctor, what did your autopsy reveal regarding the external examinations?

A. The external examination showed that this was a normally developed and quite well nourished infant. Was 32 inches long and he weighed 21 pounds.

Over the right frontal region of the forehead, the right of the midline, there was a superficial contused abrasion. In laymen's terms a bruise crease, which was one inch in greatest diameter. Over the forehead in the midline there was a medium purple bruise one half inch in diameter. In front of the right ear there was a medium purple bruise three quarters of an inch in diameter and just above the right side of the jaw there was an irregular, medium purple bruise one half inch in greatest diameter.

There was superficial abrasions about the nostrils of the child. Over the front of the chest wall and over the anterior or front of the abdominal wall there was multiple and well defined light to medium purple bruises from one half to one inch in greatest diameter.

Over the small of the back and straddling the midline there was an area of medium purple bruising three inches in greatest diameter.

Beyond this, there were no external signs of any disease or injury.

Q. Doctor, what did your internal examination show?

A. * * *

The lateral portion of the left lobe of the liver showed a crushing star shaped laceration two and a half inches in greatest diameter and extending all the way from the front of the liver to the back of the liver.

The right lobe of the liver showed a linear laceration in the back and this was two inches long and one half inch deep.

A loop of small bowel showed a near complete transection in the body's midline and the small bowel mesentery, which is the tissue that supplies the bowel proper with blood and lymph vessels showed a laceration.

The tail of the pancreas, which lies way in the back of the abdominal cavity, showed a near complete crushing transection in the midline.

The internal examination of the rest of the trunk was essentially negative. The internal examination of the head showed, upon reflection of the scalp, there were eight well defined bruises over the left frontal, the right frontal, the left temporal and the left parietal region and these measured up to one inch in greatest diameter and were uniformly medium purple. The skullcap itself, was intact.

There was moderate swelling of the brain and congestion of the superficial vessels.

\* \* \* \* \* \*

Q. \* \* \* Would you mind demonstrating to the jury the amount of force it would take to cause the injuries to a child like that age and that size?

A. I would say it would take a real hard punch on the child.

Q. A double fisted—

A. Either with a fist or with the edge of the hand in a karate manner. It could not be caused by simply slapping the child on the stomach. Couldn't compress the abdomen.

\* \* \* \* \* \*

Q. What type of injury would cause a crushing of the stomach area that you have described here today?

A. A very severe blow to the abdomen or preferably with the child stationary and immobilized against a hard surface or a firm surface, permitting the abdominal wall to be crushed backwards or pushed backwards so that the pancreas and liver could be crushed against the

spinal column and pancreas partly transected the small bowel and partly transected the mesentery.

\* \* \* \* \* \*

This was a very severe injury, the type that one usually sees in automobile accidents with impact on the steering column or airplane accidents with impact."

■ Courts have repeatedly held that an intent to kill may be inferred from an assault on a child by blows without a weapon and that, consequently, a verdict for second degree murder is correct. Moore v. State, 15 Md.App. 396, 291 A.2d 73 (1972); People v. McFee, 35 Mich.App. 227, 192 N.W.2d 355 (1971); State v. Lamborn (Mo. Sup.Ct.), 452 S.W.2d 216 (1970). In the light of the evidence in the case the jury could find second degree murder based on the fact that malice is implied when no considerable provocation appears or when the circumstances attending the killing show an abandoned and malignant heart. A.R.S. § 13–451B.

The appellant argues that the definition of second degree murder in the court's instruction to the jury was erroneous and misleading. The court instructed the jury as follows:

"Murder is the unlawful killing of a human being with malice aforethought.

Malice aforethought may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears or when the circumstances attending the killing show an abandoned and malignant heart.

Murder of the second degree is the unlawful killing of a human being as the direct causal result of an intentional act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with wanton disregard for human life.

When the killing is the direct result of such an act, it is not necessary to establish that the defendant intended that his act would result in the death or a human being."

It is to be observed that the first and second paragraphs of the instruction are direct quotations of A.R.S. § 13–451A and B. The last two paragraphs of the instruction were requested by the State and were taken from California Jury Instructions, Criminal, No. 8.31, as it was prior to the 1974 revision. Criminal instruction 8.-31, has been repeatedly upheld in the California courts as a proper statement of the law. See e. g., for the latest cases, People v. Poddar, 10 Cal.3d 750, 111 Cal.Rptr. 910, 518 P.2d 342 (1974); People v. Conley, 64 Cal.2d 310, 49 Cal.Rptr. 815, 411 P.2d 911 (1966).

■ The appellant's argument in essence is that the instruction in inconsistent with our case of State v. Chalmers, 100 Ariz. 70, 411 P.2d 448 (1966), in that it fails to exclude actions precipitated by passion or gross negligence. Appellant also argues that the instruction fails to distinguish between the use of a deadly weapon and other acts which may lead to death, arguing that malice or intent to kill may not be inferred merely from a blow with the hand. As to this latter, we pointed out in the cases cited *supra* that malice may be inferred from a blow with the hand where the assault is on a child and of a nature as is likely to cause severe injuries. *See also,* State v. Coward, 108 Ariz. 270, 496 P.2d 131 (1972), in which murder in the second degree was affirmed in the case of an assault by a man on a woman.

We think appellant is also in error when he attempts to apply the decision in *Chalmers* to the instant case. State v. Chalmers was a case in which the defendant was charged with and convicted of second degree murder by driving an automobile in a grossly negligent manner. We reversed, holding that the general murder statute § 13–451, had no application to a death caused by driving a vehicle unless accomplished with malice aforethought, "and that negligent conduct cannot be sufficient to

imply malice." *Chalmers, supra,* 100 Ariz. 70, 76, 411 P.2d 448, 452. The negligent conduct in the Chalmers case was driving an automobile at a speed estimated at between 80 and 100 miles per hour.

The instruction complained of states that murder of the second degree is the killing of a human being as a direct causal result of an intentional act. In *Chalmers,* the excessive speed was an intentional act, but the collision which resulted was an unintentional act. The homicide in *Chalmers,* therefore, was not the direct causal result of an intended act. Rather, it was the direct causal result of an unintentional act, the collision. In the instant case, the direct causal act is the intentional striking of the deceased child by the appellant. This intentional act of striking the child if found by the jury to involve a high degree of probability that it would result in death, and if done for a base, antisocial purpose and with a wanton disregard for human life, is the act which constitutes murder of the second degree.

We do not think the instruction conveys the thought that grossly negligent behavior can be used to supply the malice necessary for murder. However, malice may be presumed from the proof of the homicide alone if the evidence adduced to establish the homicide shows neither mitigation nor justification or excuse. State v. Maloney, 101 Ariz. 111, 416 P.2d 544 (1966).

Finally, appellant complains of the refusal of the court to give his requested instruction on involuntary manslaughter. A.R.S. § 13–456 provides:

"A. Manslaughter is of three kinds:

1. Voluntary, upon a sudden quarrel or heat of passion.

2. Involuntary, in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death in an unlawful manner, or without due caution and circumspection.

\* \* \* \* \* \*"

Appellant acknowledges that he could have acted in passion with the intention of striking the deceased and that this is consistent with voluntary manslaughter on which an appropriate instruction was given. It is his position that involuntary manslaughter can result from an unlawful act not amounting to a felony or from a lawful act negligently performed, and that appellant "might very well have acted either intentionally or unintentionally in striking the decedent as hard as he did."

By A.R.S. § 13–245, an assault or battery is aggravated "when committed . . . by a person of eighteen years or more upon a child the age of fifteen years or under." Hence, the homicide could not have been in the commission of an unlawful act not amounting to a felony.

The fallacy in appellant's argument that he might very well have not intended to strike the deceased as hard as he did is the absence of evidence to that effect. Appellant did not testify at the trial and there is no suggestion that we can discern from the evidence that his striking the child with the force which caused his death was unintentional. If we assume that the chastisement of this fourteen-months baby was a lawful act, there is still no evidence that it was negligently done, that is, without due caution and circumspection.

For the foregoing reasons, the judgment is affirmed.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.